Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
Angel Pagán Pagan (en adelante el "apelante"), recurre oportunamente de una "Resolución" emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 28 de junio de 2000. Apelación, Resolución y Notificación, a las págs. 24-28 del apéndice. Dicho foro aprobó un Informe y Recomendaciones de la Examinadora de Pensiones Alimenticias rendido como resultado de una vista celebrada el 22 de mayo. En su consecuencia, declaró "Ha Lugar" una "Moción Solicitando Aumento de Pensión Alimenticia" presentada por Ilia E. González Lugo (en adelante la "apelada"), y modificó una previa pensión alimentaria a la suma de $220.00 mensuales, retroactiva al 1ro. de septiembre de 1999. Además, el apelante continuaría pagando la matrícula y la mensualidad del colegio donde estudia su hija menor. Por último, a tenor con el Art. 29 de la Ley Orgánica de la Administración para el Sustento de Menores ("L.E.S.M."), 8 L.P.R.A. see. 521, condenó al apelante a satisfacer el pago de $300.00 por concepto de honorarios de abogados. Apelación, Resolución, a las págs. 25-28 del apéndice. Oportunamente, el 21 de julio de 2000, el apelante solicitó determinaciones de hechos adicionales a tenor con las disposiciones de las Reglas 43.3 y 47 de las de Procedimiento Civil. Apelación, Moción Solicitando Determinaciones de Hechos Adicionales y Moción de Reconsideración, a las págs. 29-43 del apéndice. Ambas mociones fueron declaradas "No Ha Lugar" el 1ro. de septiembre de 2000. Por su parte, el 7 de marzo, la apelada presentó su alegato oponiéndosé al recurso presentado. A continuación, en lo pertinente, el trasfondo fáctico y procesal que dio origen al recurso, según surge de los documentos presentados.
*772 n
Los comparecientes se divorciaron en el año 1994, estipularon una pensión alimentaría de $375.00 mensuales, más el pago de la educación de una menor, procreada vigente su matrimonio, que a la fecha del dictamen recurrido contaba con doce (12) años de edad. Cuando se estipuló la pensión, el apelante trabajaba en Nycomed, una compañía química. Posteriormente, renunció a su empleo acogiéndose a un plan de cesantía voluntaria ofrecido por la compañía. En el año 1996, solicitó una rebaja de la pensión acordada, a lo que consintió la apelada. En su consecuencia, la pensión fue modificada a la suma de $150.00 mensuales.
Antes del aumento de la pensión que es objeto de nuestra atención, el apelante pagaba los $150.00 estipulados, $384.00 anuáles de matrícula y la mensualidad de $130.00 del colegio donde estudia la menor. Con fecha 27 de agosto de 1999, la apelada solicitó se fijara una nueva pensión alimentaria para su hija y la imposición de $500.00 en concepto de honorarios de abogado. Apelación, Moción Solicitando Aumento de Pensión Alimenticia, a la pág. 12 del apéndice. El 25 de octubre de 1999, el apelante se opuso al aumento solicitado. Apelación, Moción en Posición a Aumento de Pensión Alimentaria, a las págs. 13-14 del apéndice
Tras varios incidentes procesales, a saber, requerimiento de admisiones, interrogatorios, solicitud de órdenes protectoras, etc., el 22 de mayo de 2000, se vio una vista ante la Examinadora de Pensiones. En la vista testificó el apelante, la apelada y Nereida Pagán Pagan, hermana del apelante; además, se sometieron varios documentos. Posteriormente, el 28 de junio de 2000, el foro apelado emitió la resolución objeto de este recurso, concediendo un aumento en la pensión de $150.00 a $220.00 y ordenó al apelante a que continuase sufragando los gastos de educación de su hija. Oportunamente, como hemos mencionado, el apelante presentó una solicitud de determinaciones de hechos adicionales y de reconsideración, las que fueron declaradas No Ha Lugar,
Inconforme, el apelante alega que el foro apelado cometió el siguiente y único error:
"Erró el Honorable Tribunal de Primera Instancia al calcular la pensión del demandado-recurrente sin tomar en consideración la deducción correspondiente a los gastos incurridos en los materiales y. efectos incluidos en los gastos operacionales del negocio de éste."
Es menester aclarar que, a pesar de que el dictamen objeto del recurso fixe titulado "Resolución", toda i determinación con respecto a alimentos de menores, por ser una modificación del dictamen final previo, constituye siempre una adjudicación final, por lo que debe identificarse como sentencia. Figueroa Hernández v. Del Rosario Cervoni, Op. de 23 de noviembre de 1998, 98 J.T.S. 151, a la pág. 344.
m
El señalamiento de error requiere que examinemos si el foro apelado determinó correctamente la capacidad del alimentante.
De entrada, es menester señalar que es doctrina claramente establecida que un tribunal apelativo no \ intervendrá con las determinaciones de hechos, ni con la adjudicación de credibilidad que haga el Tribunal de j Primera Instancia, salvo que éste haya incurrido en pasión, prejuicio, parcialidad o error manifiesto. Véase López Vicil v. I.T.T Intermedia, 142 D.P.R. 857, 864-865 (1997); Monitor v. Soc. de Gananciales, 133 D.P.R.: 600, 610 (1995). En ausencia de prueba en contrario, se presume la corrección de los procedimientos y determinaciones judiciales. Pueblo v. López Guzmán, 131 D.P.R. 867, 898 (1992).
No obstante, dicha norma no es infalible. Aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este tribunal. Por ello, aunque haya evidencia que sostenga las conclusiones de hechos del tribunal sentenciador, si de un análisis de la totalidad de la evidencia quedamos convencidos que son claramente erróneas, intervendremos con éstas. Como por ejemplo, cuando las conclusiones están en conflicto con ú balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos *773 claramente erróneas. Méndez v. Morales, supra.
Como señalara el Tribunal Supremo en Benitez Guzmán v. García Merced, 126 D.P.R. 302,308 (1990):
"Reiteradamente, hemos establecido que no intervendremos con las determinaciones dé hechos del tribunal sentenciador, a menos que exista error manifiesto o éste haya sido movido por prejuicio, parcialidad o pasión. ’Se impone un respeto a la aquilatación de credibilidad del foro primario en consideración a que sólo tenemos... récords mudos e inexpresivos'. Esas apreciaciones deben ser objeto de gran deferencia en ausencia de circunstancias extraordinarias o indicios de pasión,.prejuicio, parcialidad o error manifiesto que nos mueva a intervenir," (Escolio omitido). Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). Véase, también, Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985).
Sin embargo, cuando estamos ante prueba documental, los tribunales apelativos o de revisión estamos en igual posición que la sala sentenciadora para hacer nuestras propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función revisora. Moreda Toledo v. Rossetti, Op. de 3 de marzo de 2000, 2000 J.T.S. 69, a la pág. 950.
La obligación de los padres de alimentar a sus hijos emana de los Artículos 143 y 153 del Código Civil, 31 L.P.R.A. 562 y 601. Mientras el Artículo 143 se refiere a la obligación alimentaria entre parientes, el Artículo 153 establece la obligación que tienen los padres, en el ejercicio de su patria potestad, para con sus hijos.
Cuando el padre alimentante no tenga la patria potestad sobre el alimentista y éste no viva en su compañía, como ocurre en el presente caso, su obligación alimentaria estaría reglamentada por el Artículo 143, 31 L.P.R. A. see. 562. Bajo esas circunstancias, el deber de proveer alimentos dependerá de las necesidades alimentarias del alimentista y la capacidad del alimentante para satisfacerlas. Artículo 146 del Código Civil, 31 L.P.R.A. see. 565. Cuando la obligación de proveer alimentos recaiga sobré dos o más personas, el pago de la pensión se repartirá entre éstos en proporción a sus respectivos caudales. Artículo 145 del Código Civil, 31 L.P.R.A. see. 564; véase Guadalupe Viera v. Morell, 115 D.P.R. 4, 11-13 (1983).
Para fijar una pensión alimentaria, el Artículo 19 de L.E.S.M., 8 L.P.R.A. see. 518, exige el uso de las Guías Para Determinar y Modificar Pensiones Alimentarias [sic] en Puerto Rico. En tomo al uso de las Guías, el referido Artículo dispone lo siguiente:

"Se presumirá que la pensión alimentaria resultante de la aplicación de las guías es justa, adecuada y en el mejor interés del menor. Dicha presunción podrá ser controvertida por cualesquiera de las partes utilizando los criterios establecidos por el Estado Libre Asociado de Puerto Rico. Si a base de la evidencia presentada para rebatir la presunción, el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria luego de considerar, entre otros, los siguientes factores:

(1) Los recursos económicos de los padres y el menor;

(2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;

(3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;

(4) las consecuencias contributivas, para las partes, cuando ello sea práctico y pertinente, y

(5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor.

También hará constar cuál hubiera sido el monto de la pensión resultante al aplicar las Guías Mandatorias 
*774
para Fijar y Modificar Pensiones Alimentarías en Puerto Rico adoptadas, según dispone este CapítuloJ"

Dado que la cuantía de la pensión dependerá, en parte, de la capacidad económica dlel alimentante, impera que esta capacidad se descubra completamente. La L.E.S.M. define el concepto ingresos ampliamente para que no quede "...duda alguna de que deberá recurrirse a todas las fuentes concebibles de las cuales el alimentante derive ingresos, y además a su capital y ala totalidad de su patrimonio". Sarah Torres Peralta, La Ley Especial de Sustento de Menores de 1994 y El Derecho de Alimentos en Puerto Rico, San Juan, Publicaciones S.T.P., Inc., Edición Especial 1997, pág. 2.6.
Las secciones 501 (16) y (17) de la L.E.S.M. definen los términos "ingresos" e "ingreso neto", A continuación transcribimos ambos in extenso:

"(16) Ingresos.— Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado, de sueldo, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés de tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.

(17) Ingreso neto. — Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente."
En tomo a la determinación del ingreso de un alimentante, y haciendo referencia a casos como López v. Rodríguez, 121 D.P.R. 23 (1988) y Viera v. Morell, 115 D.P.R. 4 (1983), nos explica Torres Peralta, supra, ala página 2.2, lo siguiente:
"La determinación respecto a la capacidad económica del alimentante y ala necesidad del alimentista es siempre una cuestión de hecho que queda generalmente al juicio prudente y discreción del juzgador. Para hacer tal determinación, el tribunal no está limitado por la prueba documental y oral que recibe en la vista. Puede recurrir a evidencia circunstancial, tomar en cuenta el estilo de vida del alimentante y también la realidad de la economía subterránea que prevalece en Puerto Rico." (Notas omitidas)
Expuesto estos principios, procede considerar el recurso ante nosotros. El apelante objeta en su señalamiento de error, la determinación que hizo el foro apelado, al calcular la pensión alimentaria sin tomar en consideración la deducción correspondiente a los gastos incurridos en los materiales y efectos incluidos como gastos operacionales del negocio de éste. Por su parte, al aprobar la recomendación de la Examinadora, el foro apelado determinó, entre otros, lo siguiente:

*775
"a) la aplicación de las Guías Mandatorias era razonable;

b) que el apelante controlaba sus propios ingresos al trabajar por cuenta propia;

c) que éste preparó un estado financiero y obtuvo un préstamo del Banco Oriental para mejoras a su negocio;

d) que informó en su solicitud de préstamo que su verdadero capital ascendía a $150,000, lo que corroboró con un estado financiero preparado por un Contador Público Autorizado;

e) no obstante, bajo juramento declaró que el estado financiero no era correcto y que lo había preparado con la intención de defraudar a la institución bancaria; y

f) que el apelante pudo también haber mentido en la información ofrecida en la Planilla de Información Personal y Económica y en su Planilla de Contribución Sobre Ingresos."

Como parte de la prueba presentada ante el foro apelado, como hemos mencionado, se desprende que el apelante solicitó un préstamo en el Banco Oriental para mejoras a su negocio. Como prueba de su situación económica sometió un estado financiero informando ingresos anuales brutos ascendentes a $103,411.00. Luego de deducido los gastos a los ingresos brutos, se obtenía un beneficio neto de $46,933.00. No obstante, al ser confrontado con esa realidad financiera, el apelante testificó, como hemos señalado, que la información ofrecida a la institución financiera no era correcta y que la ofreció con la intención de defraudar a ésta. Por otro lado, según testificó Nereida Pagan, hermana del apelante, éste no paga renta alguna en el apartamento de su propiedad. No obstante, el apelante informó en su Planilla Información Personal y Económica que tenía gastos mensuales ascendentes a $1,618.00, entre los que se encontraban esa renta.
Expuesto lo antes dicho y del examen a los escritos y a la prueba presentada, concluimos que el apelante no ha demostrado que el foro apelado cometiera el error señalado, por lo que su determinación merece respeto y deferencia. Tampoco surge, ni éste nos ha demostrado, que la decisión del foro apelado estuviere matizada por pasión, prejuicio, parcialidad o error manifiesto, o que abusara de su discreción. En su consecuencia, no podemos sustituir la determinación apelada.
En atención a lo expuesto, confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General