Gustavo Adolfo Benítez Guzmán y Luisa Benítez Guzmán, demandantes y recurrentes, *v.* María García Merced y Luis Felipe Benítez García, demandados y recurridos.

*Número:* RE-88-92          *Resuelto:* 30 de abril de 1990

*Carlos Sotomayor Rodríguez* y *Humberto J. Ramírez*, de *Ramírez & Asociados*, abogados de los recurrentes; *Sigfredo A. Irizarry Semidei*, abogado de los recurridos.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

Este recurso nos permite determinar a quién le pertenece el pago global por concepto de una pensión de retiro recibida durante el segundo matrimonio del pensionista. Resolvemos que le pertenece privativamente al cónyuge titular del derecho a la pensión.

I

El 26 de mayo de 1979 el Sr. Felipe Benítez Rivera cumplió sesenta y cinco (65) años de edad y treinta (30) años de servicio en las Empresas Goya (Goya), lo que lo hizo acreedor a la pensión de retiro de la empresa. Sin embargo, conforme al plan de retiro de esta empresa, Don Felipe decidió continuar trabajando y diferir el pago de la pensión hasta la fecha en que lo solicitara. De acuerdo con el plan de pensiones de Goya, la empresa asume la totalidad de su costo. Por esta razón los empleados no hacen aportaciones de su salario para sufragar la pensión de retiro.

El primer matrimonio de Don Felipe finalizó el 29 de enero de 1981 con la muerte de su esposa, Doña Lydia Guzmán Peterson. Doña Lydia falleció sin dejar testamento. Nunca se dividió la sociedad legal de gananciales constituida entre ellos ni se adjudi-

caron formalmente a sus dos (2) hijos los bienes que correspondían a su caudal hereditario.(1)

Así las cosas, el 25 de enero de 1983 Don Felipe se casó con Doña María García. Durante la vigencia de este matrimonio, Don Felipe recibió los beneficios de su pensión de retiro en un pago global de $150,545.74.(2) El 29 de agosto de 1984, diez (10) meses después de haber recibido la pensión, Don Felipe murió intestado.

Posteriormente, los hijos del primer matrimonio de Don Felipe, Gustavo y Luisa, presentaron una demanda en la que le reclamaban a Doña María y al hijo de ésta con Don Felipe, Luis Felipe, sus derechos hereditarios en el caudal de su difunta madre, Doña Lydia, y en el de su difunto padre, Don Felipe.

Luego de varios incidentes procesales, el tribunal de instancia concluyó que el pago global por concepto de la pensión de retiro recibida por Don Felipe era de carácter ganancial perteneciente a la segunda sociedad y, por ende, lo adjudicó a los caudales hereditarios de Don Felipe y Doña María.

Ante nos, los hijos del primer matrimonio cuestionan esta decisión y sostienen que el pago global era de naturaleza privativa. Argumentan, además, que el foro de instancia se equivocó al formular sus determinaciones de hecho y en la imposición de honorarios de abogado.

## II

■ Tanto nuestra jurisprudencia como la doctrina española reconocen que el derecho a la pensión por retiro es personalísimo y nunca acrece el haber común. Así lo consignamos en *Maldonado v. Tribunal Superior*, 100 D.P.R. 370, 375 (1972): "La doctrina

---

(1) Sin embargo, el tribunal de instancia determinó que no había "duda de que entre la fecha en que [Doña Lydia] falleció y la fecha en que don Felipe murió, don Felipe y los demandantes —o cuando menos, don Felipe con el consentimiento y participación de los demandantes— dispusieron de casi la totalidad de los bienes muebles que formaban parte del caudal relicto de dona Lydia". Apéndice 11, pág. 122.

(2) El plan de retiro de las Empresas Goya normalmente paga los beneficios mediante una anualidad o renta vitalicia con abonos periódicos mensuales. No obstante, el empleado tiene la opción de que se le paguen los beneficios en un pago global.

considera que la naturaleza personalísima de estas anualidades determinan [sic] su carácter privativo. Se trata de créditos *intuitu personae* —esto es en consideración a la persona— que, por su propia naturaleza, están excluidos de la masa común." En esta situación se reconoce una excepción al Art. 1301(2) del Código Civil, 31 L.P.R.A. sec. 3641(2), que determina el carácter ganancial de los bienes "obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos". Véase *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 93 esc. 4 (1981).[3]

■ Recientemente, en *Delucca Román v. Colón Nieves*, 119 D.P.R. 720 (1987), reafirmamos la naturaleza privativa del derecho a pensión y, al así hacerlo, rechazamos que éste estuviera sujeto a división al momento de la disolución de una sociedad de gananciales. No obstante, en *Maldonado v. Tribunal Superior*, supra, reconocimos la diferencia entre el derecho a recibir la pensión y los pagos periódicos en virtud de una anualidad de retiro. Así, pues, a base de una interpretación del Art. 1303 del Código Civil, 31 L.P.R.A. sec. 3643, resolvimos que los abonos mensuales de una pensión de retiro "tienen más bien el carácter de frutos civiles, lo que determin[a] su clasificación como un bien ganancial mientras se perciban durante el matrimonio. A *contrario sensu*, una vez disuelto el vínculo matrimonial, dichas cantidades sólo acrecen el patrimonio del titular del derecho de pensión". (Citas omitidas.) *Maldonado v. Tribunal Superior*, supra, pág. 377.

En el citado caso *Maldonado v. Tribunal Superior* interpretamos el Art. 1303 del Código Civil, *supra*, conforme a la doctrina española. Dicha disposición establece que el derecho de usufructo o de pensión perteneciente a uno de los cónyuges formará parte de sus bienes propios pero los frutos, las pensiones y los intereses devengados, vigente el matrimonio, se consideran gananciales. Los tratadistas no consideran del todo aceptable la norma expre-

---

[3] Luego de la Reforma de 1981, el nuevo Art. 1346 del Código Civil español reconoce expresamente la naturaleza privativa de los "derechos patrimoniales inherentes a la persona".

sada ya que la separación entre el derecho de usufructo o de pensión y su especial contenido es difícil:

> Salvo en ciertas pensiones, como las de los censos, respecto de las que no hay lugar a duda, y salvo también en el caso en que el derecho experimente una transformación o sustitución, quítese en el usufructo el uso y disfrute de los objetos, y en la pensión el abono periódico de cantidad, sea en frutos o en metálico, y lo que queda, nada realmente representa, apariencia de algo que en el mismo disfrute va embebido. Por esto, no cabe enajenar el derecho con independencia de su propio ejercicio o contenido, porque no hay aquí una especie de nuda propiedad en la que más tarde o más temprano haya de refundirse el percibo de los frutos o de la pensión. De modo que, en resumen, eso que la ley considera como capital o derecho propio de uno de los cónyuges queda convertido en la realidad en una sombra del ejercicio o disfrute mismo . . . . Capital y frutos, prescindiendo de sutilezas y distinciones oscuras, representan una sola y misma cosa. J. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1969, T. IX, pág. 700. Véase, también, J.L. De los Mozos en *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. XVIII, Vol. 2, págs. 155–156.

■ Puig Brutau es más preciso en la concepción del problema al señalar que "las pensiones [entiéndase los abonos periódicos] de una renta vitalicia no sólo contienen el pago de un interés, sino además la restitución de una parte del capital". J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1969, T. IV, Vol. 1, págs. 641–642, citado en J. Lacruz Berdejo, *Derecho de Familia—El matrimonio y su economía*, Barcelona, Ed. Bosch, 1966, pág. 499. Técnicamente, si el derecho a la pensión es privativo, la devolución del principal o capital de la pensión también debería serlo. No obstante, la solución ha sido que, tratándose de una renta vitalicia, las pensiones cobradas —vigente el régimen de gananciales— son consorciales aunque el derecho a la renta sea privativo. Lacruz Berdejo, *op. cit.*, pág. 201; *Maldonado v. Tribunal Superior*, supra.

Esta solución provista por el Código Civil para determinar el carácter privativo o ganancial de los pagos periódicos de una anualidad vitalicia, por ser relativamente simple, es de fácil

aplicación pero constituye una imprecisión, ya que asume que la totalidad de los abonos constituye frutos civiles e ignora la porción de capital que cada pago contiene. No obstante, la norma no pretende convertir en ganancial el capital privativo de una renta vitalicia.

Por ejemplo, Manresa señala que si se tratara de una pensión no personalísima, la cual es enajenable, el cónyuge titular que dispone de ella y adquiere a cambio un equivalente en metálico recibe un pago que, como sustitución del capital de la pensión, es privativo. Manresa, *op. cit.*, pág. 703.

Del mismo modo, el pago global del beneficio de un plan de retiro es privativo por constituir la liquidación total del derecho a la pensión. En ese sentido representa la conmutación de una anualidad o renta vitalicia por una suma de dinero. Si dicha cantidad de dinero fuera equivalente a la anualidad que sustituye, debería computarse a base del valor presente de los pagos periódicos que se esperan desembolsar o, dicho en términos más sencillos, representaría el capital de la anualidad.

Una vez se descubre que el pago global de una pensión de retiro constituye la liquidación del derecho o el capital de una renta vitalicia, es forzoso concluir que le pertenece privativamente al titular del derecho a la pensión.

Al aplicar los principios expuestos al caso de autos, concluimos que el pago global de $150,545.74, recibido por Don Felipe por concepto de la liquidación de la pensión devengada en las empresas Goya, es privativo. Por lo tanto, erró el tribunal a quo al adjudicarlo ganancial de la segunda sociedad matrimonial. Considerando los términos del plan de retiro en el caso de autos, en que la empresa aportó la totalidad del capital, tampoco le corresponde un crédito a la primera sociedad conyugal porque no contribuyó a sufragar el costo de la pensión. Véase *Rosa Resto v. Rodríguez Solís*, supra. Procede devolver el caso al foro de instancia para que proceda a efectuar una nueva partición de los bienes a tenor con lo que hemos resuelto.

# III

Nos resta considerar si erró el tribunal de instancia al formular las determinaciones de hecho y al imponer honorarios de abogado.

■ Reiteradamente hemos establecido que no intervendremos con las determinaciones de hecho del tribunal sentenciador a menos que exista error manifiesto o éste haya sido movido por prejuicio, parcialidad o pasión. "Se impone un respeto a la aquilatación de credibilidad del foro primario en consideración a que 'sólo tenemos . . . récords mudos e inexpresivos'. Esas apreciaciones deben ser objeto de gran deferencia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto que nos mueva a intervenir." (Escolio omitido). *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). Véase, también, *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985).

En el caso de autos no existe ninguna de estas condiciones. El juez de instancia aquilató y evaluó la prueba presentada y formuló determinaciones de hecho. No intervendremos con ese dictamen, sobre todo cuando no tenemos forma de evaluar la extensa evidencia ya que los demandantes recurrentes no elevaron una exposición narrativa de la prueba. Regla 18 del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I-A.

■ Por último, los apelantes cuestionan la imposición de honorarios de abogado. La Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula la imposición de honorarios de abogado y limita su concesión a situaciones en que la parte perdidosa haya procedido temerariamente. *Asociación de Condóminos v. Trelles Reyes*, 120 D.P.R. 571 (1988). Cuando se trata de un planteamiento novel o que no haya sido resuelto en esta jurisdicción, no se justifica la imposición de honorarios de abogado. *M. Quilinchini Sucrs., Inc. v. Villa Inv. Corp.*, 112 D.P.R. 322, 328 (1982); *Rodríguez v. John Hancock Mutual Life*, 110 D.P.R. 1 (1980); *García Larrinua v. Lichtig*, 118 D.P.R. 120 (1986).

En el caso de autos, la controversia sobre la naturaleza del pago global de una pensión de retiro no estaba expresamente resuelta en nuestra jurisdicción. Ante estas circunstancias no se justifica la imposición de honorarios de abogado.

En conclusión, *procede revocar la sentencia dictada por el Tribunal Superior y devolver el asunto al foro de origen para que se realice una nueva partición de los bienes hereditarios del causante Felipe Benítez Rivera a tenor con los principios aquí expuestos.*