*694 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Carinen L. Borrero Colón, en adelante, señora Colón, solicitando la revisión de una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo determinó que una pensión por concepto de retiro que recibirá Alvaro Santos Lugo, en adelante señor Santos, es de naturaleza privativa.
Por las razones que expondremos a continuación, se expide el auto solicitado y se revoca la Resolución emitida.
* I
Conforme surge del recurso ante nuestra consideración, la señora Colón y el señor Santos contrajeron nupcias el 16 de marzo de 1955. Durante el matrimonio entre las partes, el señor Santos trabajó como piloto de puertos, mientras que la señora Colón se desempeñó como ama de casa. Luego de cuarenta y cuatro (44) años de matrimonio, las partes disolvieron el vínculo matrimonial adviniendo final y firme la sentencia de divorcio el 8 de diciembre de 1999.
El 13 de junio de 2000, el señor Santos interpuso demanda sobre división de bienes. La. señora Colón presentó alegación responsiva y reconvención. En esta última alegó que el señor Santos había omitido en la demanda la inclusión de ciertos bienes gananciales sujetos a*división. Entre los bienes alegadamente omitidos se encontraba un cúmulo de dinero producto de aportaciones periódicas hechas al Plan de Pensiones de Pilotos de Barco (PRHPPW, por sus siglas en ingles), en adelante Plan de Pensiones, durante la vigencia del matrimonio y del cual el señor Santos era beneficiario.
Se alegó en el escrito presentado por la señora Colón que, como producto del trabajo del señor Santos por servicios prestados, a modo de beneficio márgiñal y a ser cobrado a la terminación de su empleo, durante años se fueron acumulando a través de un Fideicomiso unos fondos. Dichos dineros ascienden a $667,000. Los mismos, conforme se alegó, se generaron a través del cobro de un cargo adicional a cada barco que entraba y salía de Puerto Rico y de aportaciones obligatorias de cada piloto.
A tales efectos, argüyó la señora Colón que dichas aportaciones al Plan de Pensión eran gananciales y, en consecuencia, la sociedad legal de gananciales habida entre las partes tenía derecho a un crédito por el monto total de las mismas.
Trabada la controversia, y con posterioridad a la ocurrencia de ciertos trámites procesales que por su pertinencia serán reseñados en la Parte V de esta Sentencia, el 27 de junio de 2001, notificada en igual fecha, el tribunal a quo emitió el dictamen recurrido. Mediante el mismo, dicho foro determinó que la pensión por concepto de retiro a recibir por el señor Santos como piloto de barco era de naturaleza privativa.
*695 Inconforme con dicho dictamen, la señora Colón acude a este Tribunal. Junto con su escrito acompañó una “Moción en Auxilio de Jurisdicción". En auxilio de nuestra jurisdicción, determinamos que el señor Santos podía recibir la mitad de los haberes correspondientes a la pensión en controversia, congelando la suma restante. Contando con la comparecencia de las partes y la transcripción de la vista, procedemos a resolver.
II
En su recurso, la señora Colón alega que incidió el Tribunal de Primera Instancia al determinar que la pensión por retiro del Plan de Pensiones, cuyo beneficiario es el señor Santos, es de naturaleza privativa, no sujeta a división, ni participación, ni a crédito por las aportaciones que hiciere la sociedad legal de gananciales durante la vigencia del matrimonio de las partes.
III
El Código Civil de Puerto Rico dispone que la palabra bienes, es aplicable en general a cualquier cosa que pueda constituir riqueza o fortuna. Esta palabra hace relación al mismo tiempo a la palabra cosas que constituye el segundo objeto de interpretación jurisprudencial, según la cual sus principios y reglas se refieren a las personas, a las cosas y a las acciones. Art. 252 del Código Civil, 31 L.P.R.A. see. 1021.
Por su parte, el Art. 1301 del Código Civil, supra, sec. 3641, dispone que “son bienes gananciales: ...(2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos... ”, Añade el Art. 1307 del Código Civil, supra, sec. 3647, que “se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer”. Dicha presunción! es controvertible, lo que es igual a decir, que “siempre cede a la verdad, esto es, a la prueba”. Díaz v. Alcalá, 140 D.P.R. 959 (1996); Véase, además, Universal Funding Corp. v. Registrador, 133 D.P.R. 549 (1993); García v. Montero Saldaña, 107 D.P.R. 319 (1978). Aquella parte que desee destruir la presunción de ganancialidad, mediante preponderancia de prueba, debe demostrar que los mismos son privativos. Echevarría Jiménez v. Sunc. Pérez Meri, 123 D.P.R. 664 (1989). |
Por otro lado, el Tribunal Supremo ha decidido que las pensiones por retiro tienen carácter privativo por constituir créditos intuitu personae. Expresa dicho Foro, haciendo eco de las expresiones de Planiol y Ripbrt, “...[s]i las pensiones de retiro...quedan excluidas de la comunidad se debe, exclusivamente, a que son créditos intuitu personae, que sirven para asegurar la subsistencia de aquellas personas a quienes se pagan: sería inadmisible que, en caso de divorcio o supervivencia del beneficiario de la renta al disolverse el matrimonio, el titular de la pensión tuviese que dividir los plazos o vencimientos futuros con su ex-cónyuge o los herederos de éste... En otras palabras, si las pensiones por retiros y otras similares tienen el carácter de bienes propios, no es debido a su intransmisibilidad, sino a su finalidad, que es estrictamente personal. ” Maldonado v. Tribunal Superior, 100 D.P.R. 370, 375-376 (1972); Véase, Benitez Guzmán v. García Merced, 126 D.P.R. 302 (1990).
Añade el Tribunal Supremo: “[ejnfin, no empece el modo de adquisición, el derecho a la anualidad por retiro es uno personalismo que nunca acrece el haber común. Conviene, sin embargo, notar una distinción entre el derecho en sí y las cantidades abonadas mensualmente en virtud de ese derecho. Estas tienen más bien carácter de frutos civiles, lo que determina su clasificación como un bien ganancial mientras se perciban durante el matrimonio. A contrario sensu, una vez disuelto el vinculo matrimonial, dichas cantidades sólo acrecen el patrimonio del titular del derecho de pensión”. (Citas omitidas) Id., a la pág. 377.
Aunque las pensiones por retiro son bienes personalísimos, no susceptibles de transmisión a otra persona, el Tribunal Supremo ha sido consecuente en reconocer como gananciales las aportaciones que se efectúen para la consecución del beneficio. Díaz v. Alcalá, supra.
Sobre la naturaleza de estas aportaciones, ha expresado el Tribunal Supremo que las mismas son gananciales por ser producto del trabajo de uno de los cónyuges. Rosa Resto v. Rodríguez Solis, 111 D.P.R. 89 *696 (1981). En consecuencia, una vez disuelto el vínculo matrimonial procede la inclusión en inventario de las aportaciones y colacionarlas en la liquidación de la sociedad legal de gananciales. Véase, Carrero Quiles v. Santiago Feliciano, 133 D.P.R. 727 (1993).
Ahora bien, la jurisprudencia a establecido una distinción en aquellos casos en que las aportaciones hechas al fondo de pensión son sufragadas por uno de los cónyuges, en virtud de una deducción a su salario, y aquellas ocasiones en que el patrono asume la totalidad del costo de la pensión. En el primero de los casos no cabe duda de que la sociedad legal de gananciales ostenta un crédito por la suma total de las aportaciones hechas durante la vigencia del matrimonio. Sin embargo, si el costo de la pensión es sufragado por la empresa contratante, la sociedad no tendrá derecho a crédito alguno por este concepto al momento de la liquidación. Benitez Guzmán v. García Merced, 126 D.P.R. 302 (1990).
Expresa el Tribunal Supremo en el citado caso, “[e]l derecho de pensión por retiro es uno personalísimo que nunca acrece el haber común... El pago global del beneficio de un plan de retiro es privativo por constituir la liquidación total del derecho a la pensión. Si la empresa o patrono aportó totalmente las contribuciones al plan de retiro, sin aportación alguna por parte del pensionista casado, la Sociedad de Gananciales ni siquiera tiene un crédito por las aportaciones, distinto al caso en que la sociedad aporta para el plan de retiro ”. Id., a las págs. 304-305.
IV
La Sec. 4.14 de la Ley Núm. 151 de 28 de junio de 1968, según enmendada, conocida como “Ley de Muelles y Puertos de Puerto Rico de 1968”, 23 L.P.R.A. see. 2414, dispone que: “[tjodo barco sujeto a servicio de pilotaje según se dispone en las sees. 2412 y 2413 de este título, y todo barco que solicitare y recibiere dicho servicio sin estar sujeto al mismo, pagará los siguientes honorarios al piloto que le presente el servicio (o al piloto de tumo que ofrezca prestárselo en caso de que el capitán del barco rehúse el servicio estando el barco sujeto a recibirlo)”.
Al aprobarse el estatuto, dicho artículo disponía los siguientes honorarios al piloto, a saber:

“(a) Tres (3) dólares por cada pie o fracción de pie en exceso de seis (6) pulgadas que el barco cale en el calado más hondo que haga por cualquiera de sus lados en su ruta por el puerto en aguas normales.

(b) Veinte (20) dólares adicionales si el barco tiene que ser remolcado por no poderse mover por sí mismo.

(c)La mitad de la tarifa indicada en los incisos (a) y (b) por todo movimiento, cambio o enmienda del barco después que éste haya fondeado o atracado en el puerto, excepto cuando la enmienda requiera mover el barco de un costado a otro costado del mismo muelle o de un muelle a otro muelle que no sea contiguo.

(d) Dos (2) veces la tarifa indicada en los incisos (a), (b) y (c) si el servicio se presta después de la puesta y antes de la salida del sol.

(e) La mitad de la tarifa indicada en los incisos (a), (b) y (d), excepto en cuanto éste se refiere al inciso (c), si el barco entra a puerto porque necesitare ayuda, o al único fin de tomar agua, combustible o provisiones para continuar viaje.

(f) Dos (2) veces la tarifa correspondiente si el capitán del barco rehúsa el servicio estando el barco sujeto a recibirlo. ”

La Ley Núm. 151, supra, fue enmendada mediante la Ley Núm. 147 de 3 de julio de 1975. Mediante esta enmienda, la Asamblea Legislativa facultó a la Autoridad de los Puertos a revisar y fijar, discrecionalmente, los *697 honorarios de pilotaje establecidos en el esquema tarifario de dicha sección. Asimismo, dicha ley enmendó, en términos generales, los cargos a cobrar en los incisos (a), (b) y (c). El lenguaje enmendatorio del artículo lee, en lo pertinente:

“(a)...

La Autoridad de los Puertos de Puerto Rico revisará y fijará, discrecionalmente, los honorarios de pilotaje establecidos en el esquema tarifario de los incisos (a), (b), (c), (d), (e) y (f), tomando en consideración la tradición, el uso, la costumbre y las variables que puedan afectar dichos honorarios.

[[Image here]]
A tenor con la facultad conferida, el 1 de marzo de 1983, el Departamento de Transportación y Obras Públicas aprobó la Resolución 83-04 para la Autoridad de los Puertos de Puerto Rico. Mediante dicha Resolución, se establecieron los honorarios de los pilotos de puerto que prestan servicio de pilotaje en los puertos de Puerto Rico; se ordenó organizar una Junta Asesora Sobre Pilotaje del Director Ejecutivo de la Autoridad de los Puertos de Puerto Rico, se estableció el Plan de Retiro para Pilotos y se aprobó un reglamento para garantizar el fiel cumplimiento de lo anterior.
En la mencionada Resolución se establece que luego de haberse efectuado un estudio económico y de haberse celebrado vistas públicas, correspondía poner en vigor unos nuevos honorarios de piloto. A tales efectos, el apartado primero dispone:

“I. HONORARIOS DE PILOTAJE

1. Todo barco sujeto a servicio de pilotaje según lo disponen las secciones 4.12 y 4.13 
 de la Ley Número 151 del 28 de junio de 1968, según enmendada y todo barco que solicitare y recibiere dicho servicio sin estar sujeto al mismo, pagará los siguientes honorarios al piloto de tumo que preste el referido servicio incluyéndose al piloto de turno que ofrezca prestárselo en caso de que el Capitán del barco lo rehúse, pero estando el barco sujeto a Servicio de Pilotaje

(a) Ocho dólares y veinticinco centavos (8.25) por cada pie o fracción de pie en exceso de seis pulgadas que el barco cale en el calado más hondo que haga por cualquiera de sus lados en su ruta por el puerto en aguas normales, en cualquier movimiento (entrada, salida o enmienda) del barco.

(b) Un mínimo de doce (12) pies de calado para toda embarcación de 350 toneladas brutas de registro o más.

(c) Embarcaciones menores de 350 toneladas brutas de registro no les aplica el mínimo y pagarán a base de los pies de calado que realmente tengan.

(d) En adición a los honorarios por calado, se cobrará un cargo adicional por tonelada bruta de registro o fracción del barco, el cual se utilizará para establecer un fondo de retiro de pilotos y que se establece en el siguiente nivel:

De 3/1/83 a 12/31/83 $0.0025

De 1/1/84 a 12/31/84 $0.0050

De 1/1/85 a 12/31/85 $0.0075

[[Image here]]

*698
II. METODO DE FACTURACION Y /O COBRO

1. El cobro y/o facturación de lo anterior consistirá de dos partes, a saber:

(a) Los honorarios por calado, el cual cada piloto o grupo de pilotos facturará y /o cobrará directamente del barco, su capitán, agente o representante. Este pago se efectuará luego de prestarse los servicios, excepto cuando el. barco, capitán, dueño o agente tenga establecida una línea de crédito con el piloto que tenga derecho al cobro de los honorarios de pilotaje.

(b) El cargo adicional por tonelaje, por el cual el piloto facturará y el barco o su representante remitirá el pago enviando la cantidad correspondiente a la Autoridad de los Puertos o al fideicomisario cuando éste quede debidamente aprobado por la Autoridad. En caso de líneas de crédito, con el piloto que tenga derecho al cobro de los honorarios de pilotaje. .

2. El cargo adicional que no se haya pagado en el término de sesenta (60) días calendario después de haberse facturado el servicio prestado, devengará intereses al 9% anual y será una deuda pagadera a la Autoridad o el fideicomiso, según el caso. El cargo por calado devengará intereses al 9% anual luego de transcurridos 30 días de haberse expedido la facturación correspondiente. ”

Por otro lado, la Resolución 83-04 en su Art. IV crea el Plan de Pensión, el cual se financiará conforme establece la Resolución, de los fondos por concepto del cargo adicional de honorarios por tonelaje facturados por los pilotos.
Dispone el artículo que: “todo piloto con licencia otorgada por la Autoridad de los Puertos está obligado a aportar económicamente al Plan de Pensión y asimismo estará compulsoriamente cubierto por los términos y condiciones y los aquí establecidos; disponiéndose que se considerará como justa causa para revocar su licencia de Práctico de Puerto el incumplimiento, por acción u omisión, de cualquier disposición de este Reglamento o Resolución”.
Asimismo, se establece que los “fondos que se deriven del cargo adicional por tonelaje bruto de la embarcación serán remitidos según se indica anteriormente, de manera inicial a la Autoridad de los Puertos quien los depositará en un fondo especial (Escrow Account) hasta que se establezca la organización e implementación del Plan de Pensiones. En ese momento, los pagos deberán remitirse sin dilación al síndico correspondiente”.
Por otro lado, los fondos que se recauden del cargo adicional de honorarios por tonelaje facturados por los pilotos durante los primeros tres (3) años se utilizarán exclusivamente para la creación y mantenimiento del Plan de Pensiones, incluyendo la remuneración que reciba el síndico. Cualquier dinero sobrante, si alguno, después de los referidos tres (3) años, se dejará en reserva o se distribuirá entre los pilotos de acuerdo a las normas establecidas por el Síndico del Fideicomiso y el Director Ejecutivo de la Autoridad de los Puertos quienes deberán considerar la solidez económica del fondo de pensiones y su continuidad para el bienestar de los pilotos y el servicio de pilotaje en Puerto Rico.
Establecido lo anterior, el Plan de Pensión tuvo su origen el 1 de enero de 1988. El mismo, a la vez que es un plan de pensión, es uno de beneficios por incapacidad. Su propósito es el siguiente:

“...such system be established to encourage, attract and retain persons to the position of Pilot by providing a program to protect them from the exigencies of old age, illness and death.

A trust was established, effective January 1, 1983, providing contributions thereto could be made in 
*699
anticipation of the payments of benefits and/or the maintenance of insurance to provide health and life insurance protection, as in the case may be, for the Plan's Participants in fulfillment of the system's objective. ”

En relación con los pagos, señala el documento:

“The Association and/or members of the Shipping Community using the services of the Pilots shall pay to the Trustee from time to time such amounts in cash as provided under the terms of the tonnage levy promulgated by the Authority in compensation for the service of the pilot. ”

Cabe puntualizar que la Asociación se define como “the contributors to the Plan, and for the purpose of this document, they need not to be members of the Puerto Rico Shipping Association.
V
Dentro del marco antes enunciado, procedamos a resolver la controversia de autos. Previo a entrar en ella, sin embargo, estimamos pertinente citar lo expresado por el Juez Asociado del Tribunal Supremo, Hon. Fuster Berlingeri, en su opinión disidente en López y otros v. Porrata Doria,_D.P.R._(2002), 2002 JTS 45:
“Desde hace varios años, ya este Tribunal tiene proclamada una fuerte política constitucional de lograr la igualdad entre el hombre y la mujer, y de proteger a ésta, por tantos siglos marginada, contra la aplicación discriminatoria de las normas jurídicas. Carrero Quiles v. Santiago Feliciano, 133 D.P.R. 727, 735 (1993); Toppel v. Toppel, 114 D.P.R. 775, 791 (1983). Este Tribunal debe ser puntillosamente consecuente con su propia doctrina. No puede, como una Penélope jurídica, destejer en la oscuridad de la noche lo que tejió por el día...”.
Dicho lo anterior, pasemos a resolver la controversia ante nos, no sin antes hacer un trasfondo fáctico y procesal del caso.
Durante el proceso de divorcio de las partes (Caso Núm. JDI98-0352), la señora Colón presentó ante el Tribunal de Primera Instancia una moción solicitando se le impidiera al señor Santos disponer de los bienes gananciales hasta la adjudicación total de los mismos. Entre dichos bienes se encontraba los dineros del Plan de Pensiones en controversia.
Mediante Orden emitida el 13 de febrero de 1999, el tribunal a quo dictaminó:

“...el Tribunal Superior de Ponce ordena al Sr. Alvaro Santos Lugo, a la Puerto Rico Harbor Pilot Pension Plan and Wellfair [sic], a la Caribbean Pilot y a cualquier otra institución financiera a hacer transacción alguna relacionada con los bienes existentes del Sr. Alvaro Santos Lugo y la Sra. Carmen Colón Borrero sin autorización expresa de este Honorable Tribunal; esta orden incluye el Plan de Retiro del Sr. Alvaro Santos Lugo. ”

Así las cosas, el 8 de marzo de 1999, el señor Santos solicitó se dejara sin efecto la Orden emitida alegando que dichos fondos eran de naturaleza privativa. Argüyó en dicho escrito lo siguiente, en lo pertinente:
[[Image here]]

d. Que en el año 1986, se estructuró un plan de pensiones el cual fue suscrito por la Autoridad de Puerto [sic] de Puerto Rico “Shipping Asociation" y “The Board of Trustees of Puerto Rico Harbor Pilot Pension Plan and Welfare Plan”.

e. Que conforme a dicho plan de pensiones y el cual es para beneficio de los prácticos de puertos, éstos no 
*700
hacen aportación alguna a dicho plan.

f. Los fondos para operar el plan de pensiones provienen en su totalidad de tarifas que la Autoridad de Puertos impone a los barcos que entran y salen del país.

g. Toda vez que los prácticos de puertos no hacen aportaciones alguna al plan de pensiones aquí mencionado, los beneficios que los prácticos de puertos reciben al momento de retirarse constituyen un bien privativo y no ganancial... ”.

El foro de instancia concedió a la señora Colón término para contestar. En su escrito, argumentó la señora Colón que en el Plan de Pensiones al que pertenece el señor Santos “se acumulan cantidades de dinero por el trabajo de los prácticos de puerto en la entrada y salida de los barcos a Puerto Rico, se van acumulando unos dineros como fruto del trabajo... ”.
Sometidos ambos escritos, el Tribunal de Primera Instancia celebró una vista. En la misma, declaró el señor Pedro Félix Rivera Vélez, oficial del Plan de Pensiones. Surge de la Resolución emitida el 21 de junio de 1999 por el tribunal a quo, que dicho oficial declaró que la aportación de los dueños de barcos que hace al Plan de Pensión se hace en consideración a la labor que realiza el piloto o práctico en su puesto, quien no recibe directamente remuneración por dicho servicio, ya que es remitido al Plan de Pensión. A tales efectos, se sometió en evidencia una resolución acreditativa de lo anterior.
En su consecuencia, el magistrado de instancia, Hon. Ayala Cádiz, declinó dejar sin efecto la Orden antes reseñada.
Luego de varios incidentes procesales, el 8 de mayo de 2000, dicho magistrado, atendiendo una “Moción con Carácter de Urgencia”, presentada por la señora Colón, reiteró su directriz al señor Santos y a la PRHPW o Plan de Pensiones de que se abstuvieran de realizar cualquier tipo de transacción sin autorización expresa de dicho foro.
Así las cosas, y conforme hemos reseñado, el 13 de junio de 2000, el señor Santos interpuso la demanda del caso de autos contra la señora Colón solicitando la división de bienes. El 9 de agosto de 2000, el señor Santos nuevamente presentó una moción solicitando se decretara que la pensión a recibir era de naturaleza privativa.
El 6 de septiembre de 2000, notificada el 15 de septiembre de 2000, la magistrado de instancia, Hon. Eliadis Orsini Zayas, emitió Sentencia Parcial Declaratoria decretando que la pensión a ser recibida por el señor Santos era de naturaleza privativa no sujeta a división ni participación por la señora Colón. Dicho foro, sin celebrar vista, descansó su determinación en una certificación a los efectos de que los fondos del Plan de Pensión provienen de los dueños de los barcos que entran y salen de los Puertos de Puerto Rico, conforme la Resolución Núm. 83-04, supra. En su consecuencia, dictaminó el foro de instancia que cualquier Orden congelando los fondos de la PRHPW por motivo de alegarse que la pensión era ganancial no podría prevalecer, ya que sería contraria a lo establecido.
Inconforme, la señora Colón acudió ante nos el 13 octubre de 2000 (KLCE-00-01164). Este Tribunal, mediante Sentencia emitida, expidió el auto solicitado y devolvió al foro de instancia para que celebrase una vista a fin de determinar si la pensión en controversia era privativa o ganancial. En cumplimiento con nuestra Orden, el Tribunal de Primera Instancia celebró la vista, emitiendo el dictamen recurrido. En dicha vista, testificó nuevamente el señor Pedro Félix Rivera Vélez, oficial del Plan de Pensiones.
Expuesto lo anterior, en el caso de autos, es un hecho indubitado que el derecho a pensión es uno intuitu personae que sólo le pertenece al señor Santos. De igual forma, es privativo, una vez disuelto el vínculo *701 matrimonial, las rentas que en virtud de dicha pensión reciba el señor Santos.
Resta determinar si las aportaciones realizadas al Plan de Pensión durante la vigencia del matrimonio fueron sufragadas por la sociedad legal de gananciales, en cuyo caso tendría derecho a un crédito por el monto de las aportaciones realizadas o, si a contrario sensu, su costo fue absorbido por el patrono del cónyuge sujeto a la pensión. En su consecuencia, la controversia gira en tomo a la determinación de cual fue el haber que absorbió el pago de las aportaciones al fondo de pensión del señor Santos.
El .tribunal a quo, en la página 3 de la Resolución emitida, suscrita por la Hon. Eliadis Orsini Zayas, establece y citamos: “[IJlegamos a dicha determinación, pues se nos certificó con prueba documental fehaciente que los fondos del Plan de Pensión y Bienestar de los Pilotos de Puerto Rico provienen del impuesto que se le impone a los dueños de barcos cuando entran y salen de los puertos de Puerto Rico; que el piloto no aporta a dichos fondos para dicho beneficio. O sea, que es la empresa o dueño de los barcos quienes hacen totalmente la aportación”.
El Tribunal de Primera Instancia determinó que las aportaciones hechas al Plan de Pensión son producto de un arbitrio impuesto a los dueños de las embarcaciones que salen y entran de los puertos.
Sin embargo, ¿cuál es la causa de las aportaciones que hace el dueño del barco al Plan de Pensión del piloto? ¿Son las mismas partes de la remuneración del servicio prestado por el piloto o constituyen un arbitrio impuesto por ley a los dueños de las embarcaciones que llegan a nuestros puertos? Lo anterior, es lo mismo que decidir si se trata de una deducción directa que se hace a la remuneración del piloto por los servicios prestados en virtud de un mandato de ley, o por el contrario, es un estipendio separado e independiente del servicio prestado por los pilotos.
Comencemos señalando que los pilotos de barcos no son empleados de la Autoridad de Puertos. Los mismos brindan sus servicios de pilotaje como contratistas independientes en virtud de su relación con la Autoridad de Puertos. Por tanto, estos pilotos facturan directamente los honorarios de su servicio a las personas o entidades comerciales dueñas de las embarcaciones quienes por virtud de ley se ven obligadas a requerir dichos servicios. Los honorarios facturados por los pilotos son los establecidos por la Autoridad de los Puertos conforme facultad conferida por la Asamblea Legislativa.
Un análisis del récord ante nos, incluyendo, entre otros, la Resolución 83-04, nos llevan a la conclusión de que las aportaciones hechas al Plan de Pensión no resultan ser otra cosa que una remuneración u honorarios por los servicios prestados por el piloto. Veamos.
Conforme hemos reseñado en la Parte IV de esta Sentencia, al aprobarse la Ley Núm. 151, supra, se establecieron los honorarios al piloto que prestara el servicio. Posteriormente, mediante enmienda efectuada a dicho estatuto en el 1975, se autorizó que la Autoridad de los Puertos revisara y fijara, discrecionalmente, los honorarios de pilotaje establecidos anteriormente, mediante la mencionada Ley Núm. 151. Asimismo, se facultó que la Autoridad de los Puertos diseñara un reglamento, el cual debería establecer los derechos y obligaciones de las partes que, directamente o indirectamente, estuvieran relacionadas con la transportación marítima y los servicios de pilotaje de barcos.
Así las cosas, se aprobó, en virtud de dicho mandato legislativo, la Resolución Núm. 83-04. La misma, conforme hemos reseñado, implantó una nueva forma de pago para los honorarios de pilotaje. Previo a continuar, recordemos nuevamente que el Art. 4.14 de la Ley Núm. 151, supra, dispone que todo barco sujeto a servicio de pilotaje y todo barco que solicitare y recibiere dicho servicio sin estar sujeto al mismo, le pagará a los pilotos los honorarios que allí se establecían. Por lo tanto, no podemos llegar a más ninguna conclusión que las nuevas cantidades a ser cobradas mediante la Resolución 83-04 es por concepto de honorarios de pilotaje. La facultad *702 concedida por la Asamblea Legislativa iba dirigida exclusivamente a ese concepto.
Una vez establecidos los nuevos honorarios a los pilotos de barco, mediante la Resolución 83-04, se estableció un método para su facturación y cobro. El método establecido consiste de dos (2) partes, a saber, los honorarios por calado, el cual cada piloto o grupo de pilotos facturará y/o cobrará directamente del barco, su capitán, agente o representante y el cargo adicional por tonelaje, por el cual el piloto facturará y el barco o su representante remitirá el pago enviando la cantidad correspondiente al Fideicomiso. Esta última cantidad es la que se remite al Fideicomiso y la que está en controversia.
Del esquema anteriormente señalado se desprende que, independientemente la forma de facturar, cobrar y distribuir, lo recibido es una retribución por concepto de honorarios de piloto, en virtud, de su trabajo. Somos de opinión, que ambos pagos los hace el dueño del barco al piloto como remuneración por los servicios prestados por el último.
Por otro lado, durante todo el trámite procesal y conforme fue adoptado por la magistrado de instancia, se ha planteado que no pueden concebirse los fondos en controversia como honorarios, ya que no se toma en consideración la labor que realiza individualmente el piloto. Diferimos de lo anterior. La naturaleza misma de la cuantía denota la causa de la aportación. Nótese, que las aportaciones se realizan con base a un tanto por tonelada bruta y no una cifra nominal por entrada y salida de barcos, como sería en los casos en que no se tomara en consideración la labor del piloto para determinar el pago a realizarse.
No podemos confirmar la determinación del tribunal a quo de que el pago hecho por el dueño de la embarcación al Plan de Pensión constituye un impuesto cuando la Resolución es meridianamente clara al establecer en su Art. IV que es el piloto el que está obligado a aportar al Plan de Pensión una cantidad específica a razón de tonelada bruta cada vez que preste sus servicios de pilotaje. Aún más, establece que de no cumplirlo podría ser revocada su licencia. Si se tratara de un arbitrio impuesto a los dueños de los barcos, el piloto no podría ser responsable del incumplimiento del mismo y las cantidades obtenidas irían a las arcas de la Autoridad de los Puertos. Amén de que nada surge de la Ley Núm. 151, supra, sobre la imposición de un arbitrio.
Somos de opinión que la Resolución establece un sistema de pago de honorarios de pilotaje en donde se le hace una deducción automática al estipendio del piloto que irá destinado al pago de su obligación de aportar al Plan de Pensión. Por tanto, la persona que defacto realizó las aportaciones, es decir, quien propiamente sufragó el Plan de Pensión, fue el señor Santos con el trabajo realizado.
En su consecuencia, dichas aportaciones representan un ingreso por concepto de honorarios que incrementó el haber común de la sociedad legal de gananciales habida entre el señor Santos y la señora Colón. El hecho de que el cargo adicional por tonelada bruta fuera remitido por el dueño del barco a la Autoridad de Puertos para que formara parte de la aportación del señor Santos al Plan de Pensión, en nada afectó la naturaleza ganancial de dicha aportación.
Tratándose, pues, de una aportación ganancial en un bien privativo como lo son las pensiones por retiro, corresponde un crédito a la sociedad legal de gananciales, al momento de la liquidación, por el monto de las aportaciones hechas durante la vigencia del matrimonio.
Por último, el caso de autos se diferencia de lo dispuesto por el Tribunal Supremo en Benitez Guzmán v. García Merced, supra, toda vez que en dicho caso el patrono sufragaba el costo total de la pensión sin que se le dedujese cantidad alguna de su salario al empleado. En dichas circunstancias, establece el Tribunal Supremo que la sociedad legal de gananciales no tendrá derecho a crédito alguno por las aportaciones hechas al plan de pensión durante el matrimonio porque ésta en nada contribuyó al mismo.
*703 Sin embargo, reiteramos que el lenguaje de la Resolución 83-04 es clara al establecer cuáles serán los nuevos honorarios por pilotaje que estarán autorizados a cobrar los pilotos en Puerto Rico y establece que de esos honorarios, una porción se destinará al Plan de Pensión por retiro. Es irrelevante que el dueño del barco sea quien remita el pago al Plan de Pensiones y no el piloto. Nótese, que la controversia en el caso de autos se centra en quién contribuye al fondo de pensión por retiro, si el patrono o el cónyuge empleado. En el caso de autos, el señor Santos no es empleado de la Autoridad de Puertos, es un contratista independiente que brinda un servicio en las facilidades de la Autoridad de los Puertos y por tal razón el servicio está estrechamente regulado la Autoridad. Por razones obvias de importante interés público, la Autoridad de Puertos dicta la cuantía exacta que deberá cobrar cada piloto.
Dentro de estas disposiciones, se estableció un método de facturación donde el dueño del barco retiene unos haberes una vez facturados por el piloto y los remite directamente a la Autoridad de Puertos para el Plan de Pensión. No podemos olvidar que la parte realmente obligada al pago de la pensión lo es el piloto. Por lo cual, el Plan de Pensión se alimenta única y exclusivamente de las aportaciones que hacen los pilotos, las cuales son remitidas por los dueños de los bancos, pero que no constituyen sino una deducción que hacen los dueños de los barcos de los honorarios que le pagan a los pilotos por los servicios prestados.
VI
Por los fundamentos expuestos, se expide el auto solicitado y se revoca la Resolución recurrida. Se devolverá el caso al Tribunal de Primera Instancia para que se compute el crédito que tiene la extinta sociedad legal de gananciales compuesta por las partes.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida I. Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 14
1. Surge del historial legislativo que la Ley Núm. 147, supra, sustituyó en el inciso (a) “tres (3) dólares” con “cuatro (4) dólares”', en el inciso (b) sustituyó “veinte (20) dólares” con “veinticinco (25) dólares” y en el inciso (c) eliminó la palabra “no” antes de “sea contiguo”.
2. La Sec. 4.12 del estatuto, 23 L.P.R.A. see. 2412, dispone que ningún barco extranjero ni ningún barco de Estados Unidos que navegue bajo registro podrá entrar o salir de un puerto sin recibir servicio de pilotaje por un piloto con licencia expedida por la Autoridad [de los Puertos] para el puerto de que se trate. Véase asimismo, Reglamento Núm. 4286, Reglamento para Regular el Servicio de Pilotaje en los Puertos de Puerto Rico.
Por su parte, la Sec. 4.13, 23 L.P.R.A. sec. 2413, dispone que los siguientes barcos estarán exentos de dicho servicio de pilotaje:

“(a) Todo barco matriculado y con licencia para dedicarse al tráfico costanero, excepto cuando entre a puerto habiendo entrado antes a un puerto extranjero o salga de puerto con destino a un puerto extranjero.

(b) Todo barco perteneciente o bajo el control de los gobiernos de los Estados Unidos, Puerto Rico o países extranjeros que no se dedique al negocio del tráfico marítimo.

(c) Todo barco pesquero que traiga su propia pesca para desembarcarla en Puerto Rico si es pilotado por un piloto con licencia de Estados Unidos para el puerto de que se trate, excepto cuando entre a puerto habiendo entrado antes a un puerto extranjero o salga de puerto con destino a un puerto extranjero.

(d) Todo barco que sea exclusivamente de placer. ”

*704 3. A dicha opinión se unieren el Juez Presidente señor Andréu García y la Jueza Asociada señora Naveira de Rodón.
4. Cabe indicar que en la Sentencia Parcial Declaratoria, en una nota al calce, la juez de instancia señala que el asunto en controversia fue planteado dentro del caso de divorcio y el Tribunal se abstuvo de expresarse, ya que entendió, se debía determinar en la sala que atendía la división de los bienes. Nada indica la juez acerca de las Ordenes emitidas el 3 de febrero y el 21 de junio de 1999.
5. El señor Pedro Félix Rivera Vélez tiene negocio propio de transportación marítima y es el Síndico del Plan de Pensión.
VOTO DISIDENTE DEL JUEZ BRAU RAMIREZ - 2003 DTA 14
Disentimos respetuosamente de la determinación del Panel de revocar la resolución recurrida.
Se trata, según se desprende de la ponencia del Panel, de determinar si los beneficios que recibe el recurrido Alvaro Santos Lugo por concepto de su plan de retiro como piloto del puerto de Ponce constituyen o no un haber ganancial.
El Tribunal Supremo de Puerto Rico ha resuelto que el derecho a percibir este tipo de anualidad constituye un derecho personalísimo, de naturaleza privativa. Véase, Carrero Quiles v. Santiago Feliciano, 133 D.P.R. 727, 732 (1993); Benitez Guzmán v. García Merced, 126 D.P.R. 302, 305 (1990); Delucca Román v. Colón Nieves, 119 D. P.R. 720, 727 (1987); Rosa Resto v. Rodríguez Solis, 111 D.P.R. 89, 93 (1981); Maldonado v. Tribunal Superior, 100 D.P.R. 370, 374-377 (1972). 
No obstante lo anterior, el Tribunal Supremo de Puerto Rico ha resuelto que si se han realizado aportaciones a un plan de este tipo con dineros gananciales, el cónyuge no participante tiene un crédito a su favor en contra del beneficiario del plan, por la cuantía proporcional de las aportaciones gananciales dedicadas a tal fin. Rosa Resto v. Rodríguez Solis, 111 D.P.R. a la pág. 95; véase, además, Carrero Quiles v. Santiago Feliciano, 133 D.P.R. a la pág. 733; Díaz v. Alcalá, 140 D.P.R. 959, 974-976 (título profesional es personalísimo, pero existe crédito por las aportaciones pagadas con dinero ganancial para la obtención de dicho título); Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 638-639 (1994) (derecho a póliza de seguro es personalísimo, pero la comunidad tiene derecho a reembolso por primas pagadas con dineros gananciales).
Este crédito sólo procede, sin embargo, cuando la aportación al plan es realizada con fondos gananciales y no si el patrono fue el que hizo las aportaciones al plan. Benitez Guzmán v. García Merced, 126 D.P.R. a la pág. 307; véase, además, Rosa Resto v. Rodríguez Solis, 111 D.P.R. a la pág. 93; compárese, Carrero Quiles v. Santiago Feliciano, 133 D.P.R. a las págs. 733-734.
El peso de la prueba en estos casos corresponde al cónyuge que reclama un crédito, para establecer el mismo, así como su cuantía.
En la situación de autos, precisamente, mediante la sentencia emitida por este Panel el 25 de enero de 2001 en el caso KLCE-00-01164, dejamos sin efecto la sentencia sumaria parcial originalmente emitida por el Tribunal de Primera Instancia el 6 de septiembre de 2000 y devolvimos el asunto a dicho foro para que celebrara una vista evidenciaría sobre el asunto y brindara a la peticionaria la oportunidad de establecer su crédito.
El récord refleja que, en cumplimiento de nuestro mandato, el Tribunal de Primera Instancia celebró la vista ordenada el 30 de abril de 2001. La peticionaria no declaró, sino que descansó en la prueba documental presentada sobre el Plan. El recurrido declaró a su favor y presentó el testimonió del Síndico del Plan y de un funcionario familiarizado con el mismo.
*705 De acuerdo a la evidencia desfilada ante el Tribunal de Primera Instancia, el Plan de Pensiones de Pilotos de Barco fue establecido el 1 de marzo de 1983, mediante la Resolución 83-04 adoptada para la Autoridad de los Puertos. Según señala el Panel en su ponencia, los fondos para el Plan fueron levantandos mediante la fijación de un cargo adicional por tonelada, “[e]n adición a los honorarios por calado”, establecido por la Autoridad de Puertos conforme a la facultades que le concede la Ley a dicha agencia para determinar los honorarios de los pilotos de puerto. 23 L.P.R.A. see. 2414.
Este cargo fue fijado por tres años. Aunque el mismo era facturado por los pilotos, de ordinario no era pagado a éstos, sino que los dueños de los barcos pagaban el cargo directamente a la Autoridad de Puertos. Según la explicación ofrecida por el Síndico del fideicomiso, el pago no se acreditaba a beneficio de ningún piloto en particular, ni los beneficios de retiro dependían de la cantidad que se hubiera aportado individualmente por éstos al Plan.
El 27 de junio de 2001, mediante la resolución recurrida, el Tribunal de Primera Instancia se reafirmó en su determinación inicial y concluyó que el dinero proveniente del Plan era privativo.
En su resolución, el Tribunal de Primera Instancia determinó:

“Los fondos que se reciben por concepto del tonelaje no pueden concebirse como honorarios de pilotos, pues sin lugar a dudas, dicha cantidad obedecen a una condición inherente a la embarcación, o sea, el tonelaje de la embarcación.

[[Image here]]
[[Image here]]

Según opera este plan de pensión independientemente de la labor que rinda cada piloto de barco, a todo barco que entra y sale de puertos de Puerto Rico se le impone un impuesto de tonelaje, cuyo impuesto paga la embarcación a través del agente marítimo y esos son los únicos fondos, por concepto de ese impuesto de tonelaje, que nutren ese plan de pensión.

Para efectos de recibir la pensión no se toma en consideración la labor realizada individualmente por cada piloto, ni se cuantifica cuántos más o menos barcos atendió el piloto durante los años de trabajo; sino que todos los pilotos reciben igual cantidad al retirarse según años de trabajo, destacándose adicionalmente que el pago de esa pensión por retiro no depende del alcance, magnitud ni el desempeño de cada piloto individualmente, pues lo que determina el dinero a recibirse por el piloto son sus años de servicios y el dinero aportado al fondo de pensión por concepto de impuesto del tonelaje de la embarcación en base a lo cual se impone el impuesto, se paga, y el dinero es destinado a un fondo común que a su vez es destinado para el propósito de pensión de los pilotos de embarcación al momento del retiro.

En ningún momento desde la creación de “este plan de retiro ”, los pilotos contribuyeron ni contribuyen con sus ingresos a ese plan de pensión, por lo que determinamos como cuestión de hecho y de derecho que las pensiones que se reciben por concepto del Plan de Pensiones de Pilotos de Barcos, según el esquema de aportaciones descrito, son pensiones privativas y no gananciales. ”

Dada la citada caracterización del Plan, la cual no ha sido contradicha en forma alguna por la parte peticionaria, opinamos que la decisión del Tribunal de Primera Instancia resulta correcta.
Simple y sencillamente, no se presentó pueba en este caso de aportación “individual” alguna al Plan, acreditadle a la sociedad de bienes gananciales compuesta entre las partes, que pudiera redundar en un crédito a *706 favor de la peticionaria. Es significativo que aunque el Tribunal de Primera Instancia celebró la vista en su fondo sobre este aspecto del caso, este Tribunal no se encuentra en posición de fijar el crédito correspondiente a la peticionaria, sino que se devuelve el caso al foro de Primera Instancia para que proceda a hacerlo.
No está claro, sin embargo, cómo dicha operación podría llevarse a cabo, ya que, según indicado, las aportaciones al Plan no se acreditaron individualmente a los pilotos participantes, ni los beneficios que éstos reciben se pagan a base de dichas aportaciones. Aunque no se expresa con claridad, sospechamos que el ánimo del Panel es que la peticionaria disfrute de la mitad de los beneficios derivados del Plan, lo que es inconsistente con el carácter privativo de este tipo de beneficios. Carrero Quiles v. Santiago Feliciano, 133 D.P.R. a la pág. 732; Benitez Guzmán v. García Merced, 126 D.P.R. a la pág. 305; Delucca Román v. Colón Nieves, 119 D.P.R. a la pág. 727; Rosa Resto v. Rodríguez Solis, 111 D.P.R. a la pág. 93; Maldonado v. Tribunal Superior, 100 D.P.R. a las págs. 374-377.
En su ponencia, el Panel confiere gran importancia al hecho de que los dineros para la capitalización del Plan fueron levantados mediante aportaciones cobradas a los usuarios de los servicios de los pilotos, en calidad de honorarios. Sugiere que, en vista de esto, dichos cobros constituyen una forma de ingreso de los empleados, lo que significa que el producto del mismo es ganancial. Véase, Carrero Quiles v. Santiago Feliciano, 133 D.P.R. a las págs. 733-734.
A nuestro juicio, sin embargo, el hecho de que un cargo sea incluido como parte de los honorarios de un profesional no necesariamente implica que el mismo debe ser reputado como un “ingreso” de dicha parte.
En nuestra profesión, por ejemplo, la Ley impone el uso compulsorio de sellos forenses a los abogados, 4 L.P. R.A. see. 783 (Supl. 2001), y del sello de la Sociedad Para Asistencia Legal a los notarios, 4 L.P.R.A. see. 897 (Supl. 2001), los cuales de ordinario son cobrados por éstos a sus clientes como parte de sus servicios. No entendemos que dicho cargo sea reputado como un “ingreso” del abogado o del notario, sino que, según se conoce, este tipo de sello se utiliza para el financiamiento de programas de interés público y profesional.
En la situación de autos, a nuestro juicio, el Plan es más bien similar a la situación donde las aportaciones para el plan del retiro son satisfechas en su totalidad por el patrono, no existiendo crédito alguno que conceder a favor de la sociedad legal de gananciales. Benitez Guzmán v. García Merced, 126 D.P.R. a la pág. 307.
El Tribunal de Primera Instancia, según hemos visto, determinó a base de la evidencia presentada por las partes, que el Plan en cuestión era un plan bonafide de retiro, cuyo propósito no era disfrazar la compensación al empleado, sino protegerlo luego de su jubilación, proporcionándole los medios para su subsistencia. Maldonado v. Tribunal Superior, 100 D.P.R. a la pág. 373.
Dicha determinación merece deferencia por este foro. Municipio de Ponce v. Autoridad de Carreteras, 153 D. P.R._(2001), 2001 J.T.S. 3, a la pág. 658; Trinidad García v. Chade, 153 D.P.R._(2001), 2001 J.T.S. 10, ala pág. 793.
Confirmaría la resolución recurrida.
En San Juan, Puerto Rico, a 1 de noviembre de 2002.
GERMAN J. BRAU RAMIREZ Juez de Apelaciones
*707 ESCOLIOS VOTO DISIDENTE DEL JUEZ BRAU RAMIREZ - 2003 DTA 14
1. El Tribunal Supremo ha distinguido entre el derecho a la anualidad en sí y las cantidades abonadas mensualmente en virtud de ese derecho. Estas últimas tienen el carácter de frutos civiles, por lo que, si fuesen percibidas durante el matrimonio, se consideran como un bien ganancial. Una vez disuelto el matrimonio, como sucede en el presente caso, cualquier pago de la pensión sólo acrece al patrimonio privativo del titular de la misma. Maldonado v. Tribunal Superior, 100 D.P.R. a la pág. 377; Carrero Quiles v. Santiago Feliciano, 133 D.P.R. a la pág. 733; Benitez Guzmán v. García Merced, 126 D.P.R. a la pág. 305; Rosa Resto v. Rodríguez Solis, 111 D.P.R. a la pág. 93.
2. Contrario a lo requerido por la Regla 34, inciso (E) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXII-A, R. 34, la peticionaria no acompañó con su recurso copia de las alegaciones de las partes ante el Tribunal de Primera Instancia, los escritos de éstas relacionados al asunto en controversia, ni los exhibits presentados durante la vista. Véanse, Codesi, Inc. V. Municipio de Canóvanas, 150 D.P.R._(2000), 2000 J.T.S. 61; Córdova Ramos v. Larín Herrera, 151 D.P.R._(2000), 2000 J.T.S. 92.
3. En efecto, de aplicarse generalizadamente a todos los participantes del Plan, la interpretación adoptada por el Panel podría conducir a grandes injusticias, ya que a un participante que hubiera generado una facturación alta por este concepto se le atribuiría un “ingreso” alto, a pesar de que su participación en los beneficios del Plan resulte relativamente exigua, debido a su menor experiencia o servicio, que son los parámetros utilizados por el Plan para fijar la cantidad mensual de compensación.