Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
Disiento de la sentencia de este Tribunal, porque entiendo que en este caso no concurren las circunstancias que *884 justifican que los foros apelativos sustituyan con su criterio el del Foro de Primera Instancia. Reinstalaría la determinación del tribunal de instancia que ordena la supresión del testimonio del agente Pérez Feliciano y devolvería para que se continuaran los procedimientos. Tal conclusión se fundamenta en el Derecho y en los siguientes hechos que la mayoría del Tribunal ignora en su sentencia. Contra el Sr. Antulio Nieves Hernández (peticionario) se diligenció una orden de registro y allanamiento. Como fruto de ese registro, se incautó material ilegal consistente en armas de fuego y se presentaron acusaciones por infracción al Art. 5.06, 5.07, 5.10 y 6.01 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 458e, 458f, 458i y 459. El peticionario instó oportunamente una moción de supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para que se excluyera el testimonio que fundamentó la expedición de la orden de allanamiento. Según el Foro de Primera Instancia, el peticionario argüyó en su moción que la orden de registro y allanamiento era insuficiente y obtenida de forma contraria al Derecho; que por ser una orden ultra vires, se trata de un registro sin orden y que el testimonio que suscitó la orden de allanamiento era vago, contradictorio y, en fin, estereotipado. El Tribunal de Primera Instancia celebró una vista evidenciaría para dirimir la solicitud del peticionario.
A continuación, reproducimos lo acaecido en la vista evidenciaría según la Resolución del Tribunal de Primera Instancia.
Durante la vista evidenciaría, el peticionario reiteró los planteamientos esbozados en su Moción. Adujo que el agente Charlie Pérez Feliciano prestó vigilancia fundamentado en una información dada por un confidente, sin tener el conocimiento personal de la confidencia alegada y que de la propia observación del agente Pérez Feliciano no se percibe un acto ilegal o una transacción de arma de fuego.
Por su parte, el Ministerio Público alegó que la declaración prestada por el agente Pérez Feliciano fue suficiente *885 en derecho para expedir una orden de registro y allanamiento y que su testimonio no fue estereotipado.
El agente Pérez Feliciano testificó en la vista evidenciaría que, para el 5 de agosto de 2006, estaba investigando una confidencia con relación a un señor que se dedicaba a la compra y venta de armas de fuego. Entrevistó a un confidente que anteriormente había ofrecido información conducente al arresto y convicción de varias personas en el área de Aguadilla. El agente testificó que el confidente describió y nombró al peticionario como alguien que se dedica a la compra de propiedad hurtada, que recientemente había comprado armas de fuego y que las tenía para la venta. El confidente le describió la residencia del peticionario y brindó su dirección física. El agente Pérez Feliciano indicó que tras comunicarse con su supervisor sobre estos particulares, recibió instrucciones para que investigara la confidencia. El agente Pérez Feliciano relató que fue con el informante a localizar la residencia del peticionario y que al llegar al lugar, el confidente lo señaló. Posteriormente, el agente testificó que planificó con el informante llevar a cabo una simulación de compra de un arma de fuego. Dijo que el día pautado, se personaron ambos a la residencia del peticionario en un automóvil confidencial; que el confidente llamó al peticionario, quien salió de su casa y dialogó con el confidente antes de entrar a la casa del peticionario. Relata el agente que, al cabo de varios minutos, el informante salió con un revólver “cromeado” y cachas en madera en la mano derecha. El agente testificó que tras tenerlo en sus manos, el informante procedió a devolverle el revólver al peticionario, dialogaron un rato y se despidieron. El peticionario regresó al interior de su residencia y el confidente al vehículo confidencial. El agente indicó que le informó lo sucedido a su supervisor y que éste le dio instrucciones de hacer una declaración jurada y consultar con el Fiscal para obtener una orden de registro y allanamiento.
A preguntas de la defensa, el agente Pérez Feliciano declaró que: (1) su plan era simular una compra de arma *886 de fuego; (2) no verificó si el peticionario poseía arma de fuego; (3) a su entender el arma era real y no de juguete, y (4) no se consumó la compra porque no había dinero. Sobre el confidente, el agente declaró que no se le dio dinero porque no confiaba en él, pues tenía problemas de drogas y que no conocía su nombre, sólo su apodo, a pesar de ser un confidente participante. Finalmente, adujo el agente que no llevó a cabo más vigilancias porque a su entender, el hecho de darle el arma al confidente era un delito.
El Tribunal de Primera Instancia concluyó que los hechos del caso, según plasmados en la declaración jurada del agente Pérez Feliciano, así como relatados en su testimonio en corte, “establecen unos datos que nos llevan a concluir que la información alegada por el agente investigador, que dio motivos a la expedición de la orden de registro y allanamiento no ocurrieron como se plantean”. Apéndice de la Petición de certiorari, pág. 7. El foro primario determinó que una confidencia de la naturaleza como la del caso de autos, que relaciona a un individuo con la compra y venta de armas, debió haber sido investigada más minuciosamente. El tribunal entendió que la declaración ofrecida por el agente Pérez Feliciano contenía “muy pocos detalles sobre la investigación, el confidente y el acto delictivo a plena vista”. Id. El tribunal también opinó que el mejor curso a seguir hubiera sido llevar a cabo una compra del arma, para así tener prueba del acto delictivo al ocuparse el arma. El hecho de que no se le pidió una licencia de portación de armas le resultó al tribunal un hecho “incomprensible”, así como la contradicción que implica iniciar una investigación a base de una confidencia brindada por una persona a quien no se le puede confiar dinero y de quien no conocía su nombre a pesar de ser confidente participante. El tribunal también concluyó que el agente Pérez Feliciano fundamentó su declaración jurada en una “vigilancia flaca y descarnada y en la referencia alegada por el confidente que sorprendentemente no incluyó en la declaración jurada” como tampoco incluyó lo que le relató el confidente después de la venta simulada. (Énfasis *887 suprimido.) íd., pág. 8. Por último, el tribunal expresó que no le daba credibilidad al testimonio prestado por el agente Pérez Feliciano, pues éste “va más allá de ser uno estereotipado a ser uno increíble y absurdo” (Énfasis en el original.) Id. Por estas razones, el Tribunal de Primera Instancia ordenó la supresión de toda la evidencia ocupada en el allanamiento ejecutado en virtud de la orden que se fundamentó en el testimonio del agente Pérez Feliciano.
El Ministerio Público recurrió de esta determinación del Tribunal de Primera Instancia.
El Tribunal de Apelaciones revocó al Foro de Primera Instancia y fundamentó su decisión en el contenido de la declaración jurada prestada por el agente Pérez Feliciano. El foro apelativo entendió que de la declaración jurada surge una descripción detallada de la actividad ilegal que presenció el agente. Del mismo documento adujo el Tribunal de Apelaciones que el agente Pérez Feliciano no incurrió en contradicciones, inconsistencias, lagunas ni vaguedades; en fin, que la declaración fue sumamente específica y detallada. Por estas razones entendió el tribunal apelativo que, según la declaración jurada, se configuró la causa probable necesaria para la emisión de una orden de registro y allanamiento, por lo que procedía la revocación de la Resolución del Tribunal de Primera Instancia y la continuación de los procedimientos.
Traído el caso ante nuestra consideración por el peticionario, paralizamos los procedimientos en auxilio de nuestra jurisdicción y expedimos el certiorari solicitado. Una vez elevados los autos, nos percatamos de que el Tribunal de Apelaciones no contó con una trascripción ni con una minuta que refleje lo sucedido en la vista evidenciaría.([1]) Su decisión estuvo fundamentada en la declaración jurada del agente Pérez Feliciano, declaración que le pareció insu *888 ficiente al Tribunal de Primera Instancia y cuyo autor no mereció credibilidad, luego de haber prestado su testimonio en corte.
No se puede perder de perspectiva que el Tribunal de Primera Instancia tiene la oportunidad de evaluar el testimonio de un testigo ocular y particularmente
... el criterio cualitativo testimonial, a saber, la habilidad del deponente para percibir el acontecimiento, aptitud para conservarlo en su memoria, capacidad para evocarlo, modo de querer expresarlo, y cómo puede hacerlo, es esencial... “Ingredientes adicionales tales como el grado de inteligencia del testigo, su facilidad o dificultad para verbalizar y explicar, el nerviosismo natural que genera la sala de un tribunal, las expectativas de una confrontación de lo atestado con el contrainterrogatorio, el interés en el desenlace final del caso y un sin número de imponderables, imponen sobre los tribunales de instancia la más delicada función del quehacer judicial humano: el descubrir la verdad haciendo el mayor esfuerzo en dirimir prueba conflictiva y en muchas ocasiones incompleta”. Este proceso mental y realidad forense —que corresponde más bien a la disciplina de la psicología del testimonio— nunca puede ser ignorado por un tribunal. Su comprensión y aplicabilidad será en última instancia el elemento que inclinará de uno u otro lado la balanza de la justicia. (Citas y énfasis suprimidos.) Pueblo v. Morales Rivera, 112 D.P.R. 463, 464 (1982).
Según este fundamento, reiteradamente hemos resuelto que no intervendremos en la apreciación de la prueba oral que haga el Foro de Primera Instancia en ausencia de error manifiesto, prejuicio o parcialidad o si la prueba no se distancia de la realidad fáctica, o ésta no sea inherentemente imposible o increíble.([2]) En Hernández v. San Lorenzo Const., 153 D.P.R. 405, 425 (2001), expresamos que:
*889 ... Dado que es norma reiterada por este Tribunal que las determinaciones de hecho que hace el Tribunal de Primera Instancia merecen gran deferencia y respeto por la oportunidad que tuvo el juzgador de los hechos de observar y escuchar a los testigos, la intervención del foro apelativo con esa prueba tiene que estar basada en un análisis independiente de la prueba desfilada y no a base de los hechos que exponen las partes. (Escolios omitidos.)
También hemos dicho que no podemos sustituir la apreciación de la prueba del juez sentenciador ni sus determinaciones tajantes y ponderadas con sólo un examen de un “expediente frío e inexpresivo”. Pueblo v. Rivera Robles, supra, págs. 869-871. Véase: Rolón v. Charlie Car Rental, Inc., 148 D.P.R, 420, 433 (1999); López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857 (1997); Benitez Guzmán v. García Merced, 126 D.P.R. 302, 208 (1990).
En este caso, el Tribunal de Primera Instancia tuvo la oportunidad de evaluar el “criterio cualitativo testimonial” del agente Pérez Feliciano y fue bastante enfático en sus conclusiones sobre éste. El juzgador de instancia entendió como probado que el testimonio del agente, sobre el cual se fundamentó la orden de registro, fue vago y estereotipado y, por consiguiente, el mandamiento era insuficiente. En consecuencia, se justificaba que el peso de la prueba sobre la razonabilidad del registro quedara del lado del Ministerio Público. Por lo tanto, no fue un error manifiesto del tribunal inferior entenderlo así, según declara la Sentencia mayoritaria.
Por otro lado, resulta preocupante que se afirme mediante Sentencia de este Tribunal que “[a] pesar de que el agente no corroboró si el señor Nieves Hernández poseía una licencia para poseer armas de fuego, ese dato era impertinente ante la realidad fáctica de que no la poseía”. Sentencia del Tribunal, pág. 11. La Sec. 10, Art. II de la Carta de Derechos de nuestra Constitución, L.P.R.A., Tomo 1, ed. 2008, pág. 326, reconoce como un derecho del pueblo “la protección de sus personas, casas, papeles y efectos contra registros y allanamientos irrazonables”. Añade que la evidencia obtenida en violación a dicho principio será inad *890 misible en los tribunales. Esta regla de exclusión de rango constitucional se fundamenta totalmente en consideraciones de política pública, con el propósito, entre otros, de disuadir o desalentar a los funcionarios del orden público de violar la protección constitucional. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, pág. 284. Dicha norma no está predicada en un fundamento de la búsqueda de la verdad, por lo cual no es pertinente que la evidencia encontrada tenga o no valor probatorio.
En vista de lo anterior, la Constitución de Puerto Rico protege al pueblo de registros y allanamientos irrazonables independientemente de sus frutos, requiriendo una justificación para intervenir con la intimidad de las personas. No puede justificarse un registro irrazonable con el resultado de éste.

(1) La Regla 29 del Reglamento del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B, establece que será la parte peticionaria o apelante quien estime, si es necesario, que el Tribunal de Apelaciones considere alguna porción de la prueba oral. Si la parte determina que es necesario que el tribunal considere prueba oral, someterá una transcripción, exposición estipulada o exposición narrativa.

(2) “Esto es particularmente cierto cuando no se hubiera elevado una exposición narrativa de la prueba oral. Lo cierto es que un foro apelativo no puede descartar las determinaciones de hecho del foro recurrido y sustituirlas por sus propias apreciaciones valiéndose meramente de un examen del expediente del caso.” H. Sánchez Martínez, Derecho Procesal Apelativo, San Juan, Ed. Lexis-Nexis, 2001, See. 3702, pág. 611. Véanse: Benitez Guzmán v. García Merced, 126 D.P.R. 302, 308 (1990); Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420, 433 (1999); Pueblo v. Calderón Hernández, 145 D.P.R. 603, 605-606 (1998).