Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| MADELINE PÉREZ COLÓN<br><br>**APELADA**<br><br>v.<br><br>ARNALDO RODRÍGUEZ VÁZQUEZ<br><br>**APELANTE** | KLAN202400608 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: K AC2015-0421 (0902)<br><br>Sobre: DIVISIÓN DE COMUNIDAD |
|---|---|---|

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2024.

El apelante, Arnaldo Rodríguez Vázquez, solicita que revoquemos la sentencia sumaria en la que el Tribunal de Primera Instancia (TPI) declaró HA LUGAR, la demanda de liquidación de bienes gananciales.

La representación legal de Madeline Pérez Colón en el Tribunal de Primera Instancia informó que la apelada no presentaría un escrito en oposición.

Los hechos que anteceden la controversia que atendemos con este recurso son los siguientes.

### I

La apelada presentó una demanda de división de comunidad de bienes y deudas contra el apelante. El señor Rodríguez Vázquez contestó la demanda.

Las partes estipularon en el INFORME ENTRE ABOGADOS SOBRE CONFERENCIA CON ANTELACIÓN AL JUICIO los hechos que el TPI hizo formar parte de la sentencia y la prueba documental siguiente:

1. Sentencia de divorcio del 16 de enero de 2014, Civil Número KDI2013-1255.

2. Certificación Sistema de Retiro Educación del 27 de enero de 2016 que establece las aportaciones de Arnaldo J. Rodríguez Vazquez al sistema por $76,113.22.

3. Desglose de liquidación de bienes muebles del apartamento entre las partes.

4. Planilla de Contribución sobre ingresos de 2011.

5. Planilla de Contribución sobre ingresos de 2012.

6. Planilla de Contribución sobre ingresos de 2013.

7. Planilla de Contribución sobre ingresos de 2014.

8. Documentos de deuda de Asociación de Residentes Mont Blanc (Estados de cuentas, balances, convocatorias y otros).

9. Evidencia de préstamo Banco Santander número 008009271695 por $15,617.29.

10. Estados de cuenta tarjeta y otros documentos de tiendas MACY'S de los meses de julio, septiembre, octubre, noviembre, diciembre 2013.

11. Estados cuenta VISA.

12. Interrogatorios y sus contestaciones.

13. Emails entre las partes fechados 22, 23 y 24 de diciembre de 2014.

14. Sentencia y Orden de Embargo y Retiro de Fondos en el Caso SJ2018CV0792.

15. Estados de cuenta del IRS y pagos:
    a. 19 junio de 2013 correspondiente a año tributable 2008.
    b. 15 de septiembre de 2014 correspondiente a año tributable 2009.
    c. 5 de noviembre de 2014 correspondiente año tributable 2009.
    d. 7 de enero de 2015 correspondiente al año tributable 2009.
    e. 4 de febrero de 2015 correspondiente al año tributable 2009.
    f. 6 de mayo de 2015 correspondiente al año tributable 2009.

La apelada solicitó sentencia sumaria a su favor. El TPI ordenó al apelante expresarse. No obstante, el apelante no presentó oposición a la moción de sentencia sumaria.

El TPI declaró ha lugar sumariamente la demanda. Su decisión está basada y fundamentada en la solicitud de sentencia sumaria, la prueba que la acompaña y los hechos estipulados por las partes. Según consta en la sentencia, las partes estipularon en el Informe entre Abogados sobre la Conferencia con Antelación a Juicio los hechos a continuación. Las partes se divorciaron el 16 de enero de 2014. La sentencia de divorcio se notificó y archivó el 6 de marzo de 2014. El 6 de abril de 2014 se convirtió en final y firme. El apelante se fue el 23 de julio de 2013 del hogar conyugal ubicado en el 802 del Condominio Mont Blanc. La apelada residió en esa propiedad hasta el 31 de octubre de 2015. El 5 de enero de 2015, el apelante sacó la totalidad de los bienes que conservó en la propiedad. El apelante firmó un inventario de los bienes muebles que tenía conservados en la propiedad. El señor Rodríguez no aportó dinero alguno para el pago de la hipoteca, las derramas y cuotas de mantenimiento desde que se fue de la propiedad. Determinaciones de hecho 1-8.

La sentencia incluye otros hechos estipulados por las partes que son los siguientes. El 23 de diciembre de 2014, la apelada envió un correo electrónico al apelante en el que le informó la posibilidad de vender el apartamento y de que él y su familia se quedaran con la propiedad y le pidió que le indicara los artículos que quería del apartamento. El apelante le contestó que podía buscar sus cosas el viernes 26 o el sábado 27 de diciembre de 2014. El apartamento 802 sito en el Condominio Mont Blanc fue ejecutado y vendido en pública subasta el 24 de febrero de 2019 en el Caso Núm. K CD2016-0416. First Bank no cobró deficiencia monetaria personal alguna a ninguna de las partes, luego de ejecutar la hipoteca y de vender la propiedad en pública subasta. El apelante asumió la deuda del vehículo Volvo XC 60 T6, año 2011. Determinaciones de hecho 9-14.

Los créditos reclamados por la apelada también forman parte de las determinaciones de hecho de la sentencia. El TPI hizo la salvedad de que las partes estipularon las cantidades y las fechas reclamadas. No obstante, advirtió que el apelante no estipuló el derecho de la apelada a reclamar los créditos siguientes:

1. **Partida proveniente de Retiro del demandado.** La certificación del Sistema de Retiro que presentó el apelante evidencia que durante el matrimonio su aportación fue de $64,789.86. Dicha cantidad devengó $11,323.36 de intereses hasta el 31 de diciembre de 2016. La suma de ambas cantidades es $76,113.22 hasta el 31 de diciembre de 2016. El apelante adeuda a la apelada el 50% de esa cantidad que son $38,056.61 al 31 de diciembre de 2016. Determinaciones de hecho 15-19.

2. **Demanda en cobro de dinero y embargo por la Junta de Condómines por la cantidad de $35,921.96.** Ambas partes fueron demandadas en el caso SJ2018CV0792 en cobro de dinero por las derramas y cuotas de mantenimiento. El 4 octubre de 2018 se dictó sentencia contra ambas partes por la cantidad de $35,921.96 más los intereses. La sentencia se ejecutó mediante embargos de cuentas de la apelada por $35,921.96. Al apelante se le embargaron $799.00. La apelada reclama un crédito de 50% que es de $17,961.98. Determinaciones de hecho 20-26.

3. **Los pagos mensuales de $4,384.96 que la apelada hizo de la hipoteca del apartamento ganancial ubicado en el Condominio Mont Blanc.** La apelada pagó la hipoteca durante cinco meses en el año 2013. Durante ese año pagó $21,920.00. El 50% de esa cantidad son $10,960.00 y corresponde al crédito reclamado por la apelada. Durante el año 2014, la apelada pagó doce meses de la hipoteca que son $52,619.52. El 50% de esa cantidad son $26,309.76 y corresponde al crédito que reclama la apelada. Durante los nueve meses del año 2015, la apelada pagó $39.078.18, cuyo 50% son $19,539.09. La apelante reclama un crédito por $19,539.09. Determinaciones de hecho 27-36.

4. **Los pagos de mantenimiento que realizó la apelada.** El pago mensual de mantenimiento es de $704.61. La apelada pagó cinco meses de mantenimiento en el año 2013 que ascienden a $3,523.05. El 50% de esa cantidad es $1,761.52 y corresponde al crédito que reclama la apelada. Durante el año 2014, la apelada pagó los doce meses de mantenimiento que son $8,455.32. El 50% de esa cantidad es de $4,227.66 y corresponde al crédito que reclama la apelada. Durante el año 2015, la apelada pagó nueve meses de mantenimiento que son $6,341.49. El 50% de esa cantidad son

$3,170.74 que corresponde al crédito que reclama la apelada. Determinaciones de hecho 37-46.

5. **Los pagos de derramas que la apelada realizó en el año 2014. La apelada pagó dos derramas cada una de $1,451.68** que ascienden a $2,923.16. El 50% de esa cantidad son $1,451.68. La apelada reclama un crédito de $1,451.68. Determinaciones de hecho 47-51.

6. **Los pagos de Rentas Internas Federales (IRS) que la apelada realizó en el año 2013,** por deficiencias para los años 2008, 2009 y 2013. La deuda ascendió a $21,924.94. La apelada reclama un crédito de 50% por la cantidad de $10,962.47. Determinaciones de hecho 52-54.

7. **Los reintegros del Departamento de Hacienda del año 2013.** Durante el año 2013, el Departamento de Hacienda reintegró a ambas partes $8,918.00. La apelada endosó el cheque y se lo entregó al apelante. La señora Pérez Colón alega que el apelante nunca le entregó los $4,459.00 que le correspondía recibir del reintegro. El apelante alega que utilizó ese dinero para pagar la tarjeta de crédito VISA. La apelada alega que hizo pago a esa tarjeta. Determinaciones de hecho 55-59.

8. **Tarjeta de crédito Macy's.** La deuda para el mes de julio de 2013 era $640.70. El 50% de $640.70 es de $320.35. La apelada pagó la totalidad de esa deuda e hizo un sobrepago de $7.90. Durante el mes de julio de 2013 pagó $140.70, en agosto de 2013 pagó $300.00, en septiembre de 2013 pagó $220.06 y en noviembre de 2013 pagó $10.00. A enero de 2014 y al momento del divorcio, el balance adeudado era $0.00 y existía un crédito $7.90 a favor del demandado. Determinaciones de hecho 60-69.

9. **Tarjeta de crédito VISA.** El balance de la deuda para el año 2013 era de $6,013.30 y para el 27 de mayo de 2014 aumentó a $8,032.83. La apelada reconoció un crédito de $983.59 para el apelante, porque realizó un pago de $5,000.00. La señora Pérez Colón presentó un Estado de cuenta que evidencia ese pago. El apelante no presentó ninguna evidencia de ese pago. Determinaciones de hecho 70-74.

El foro apelado concluyó que no existe controversia de hechos materiales, porque fueron estipulados por las partes. Según el TPI, la sentencia sumaria procede porque no existe controversia de hechos y el derecho asiste a la apelada. El foro primario aplicó el derecho a los hechos materiales probados y llegó a las conclusiones siguientes. La apelada tiene derecho a un crédito por los pagos que

hizo a la hipoteca y a las cuotas de mantenimiento, previo al divorcio, debido a que son obligaciones gananciales y benefician a ambas partes. El apelante tiene que pagar a la apelada la mitad del dinero que le fue embargado para cobrar las derramas. Según el TPI, la responsabilidad es compartida porque ambos titulares son responsables del pago de las derramas previo al embargo. Ninguna de las partes residía en el apartamento cuando se instó el pleito para cobrar las derramas. No obstante, a la apelada se le embargaron los bienes para satisfacer el pago de prácticamente la totalidad de la deuda. A la apelada le corresponde otro crédito por el 50% de los pagos que el apelante hizo al retiro durante el matrimonio con dinero ganancial.

El TPI reconoció créditos de un 50% a la apelada por los pagos que hizo al IRS y por el reintegro de Hacienda y los intereses acumulados. El TPI llegó a esa conclusión porque los reintegros y las deudas contributivas de la sociedad legal de gananciales se dividen por la mitad y el pago realizado por uno solo de los deudores beneficia a ambos deudores. Igualmente reconoció el derecho de la apelada a usar la vivienda ganancial antes y después del divorcio. El TPI no reconoció ningún crédito al apelante por el tiempo que la apelada permaneció en la propiedad, debido a que el apelante: (1) nunca pidió a la apelada el pago de rentas, (2) también utilizó la vivienda, porque mantuvo allí sus pertenencias y (3) la apelada se encargó exclusivamente del mantenimiento de la propiedad. El TPI concluyó que el apelante fue temerario conforme a la Regla 44 de Procedimiento Civil, 32 LPRA Ap. V, porque se negó a reconocer el derecho vigente en asuntos tan sencillos como la liquidación del retiro y el embargo de bienes a la demandante, como consecuencia de una demanda contra ambos.

El foro primario declaró Ha Lugar la sentencia sumaria a favor de la apelada y le concedió un crédito de $138,197.27. Además,

ordenó al apelante el pago de los intereses legales acumulados hasta su retribución total e inmediata, así como el resarcimiento de costas y gastos del litigio.

El apelante presentó este recurso en el que alega que:

ERRÓ EL TPI AL DICTAR SENTENCIA EN ESTE CASO Y PRIVAR AL DEMANDADO DE SU DÍA EN CORTE.

ERRÓ EL TPI AL DICTAR SENTENCIA DE MANERA SUMARIA EN UN PROCESO DONDE NO SE CUMPLÍAN LOS REQUISITOS DE LA REGLA 36 DE PROCEDIMIENTO CIVIL POR HABER ASUNTOS MATERIALES EN CONTROVERSIA.

**II**

**A.**

**Moción de Sentencia Sumaria**

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979-980 (2022).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que

sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando: (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

La parte que pretende derrotar una moción de sentencia sumaria tiene que contestar la solicitud de forma detallada, refutar los hechos alegados y sustentar su posición con prueba. No obstante, el hecho de no oponerse a una moción de sentencia sumaria no implica necesariamente que ese remedio proceda. La existencia de hechos en controversia impide la adjudicación sumaria del caso, aun cuando no se haya presentado oposición. *Ramos Pérez v. Univisión,* 178 DPR 200, 215-216 (2010).

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra*, y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia ni esbozar nuevas teorías. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa tarea corresponde al Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de

un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

**B.**

**División de Bienes Gananciales**

La Sociedad Legal de Gananciales es el régimen económico matrimonial en el que ambos cónyuges tienen la titularidad conjunta y sin especial atribución de cuotas de todos los bienes, deudas y obligaciones adquiridas durante el matrimonio por cualquiera de ellos. *Díaz Rodríguez v. Garcia Neris,* 208 DPR 706, 716 (2022). Las partes de este caso estuvieron casadas bajo ese régimen durante la vigencia del Código Civil de 1930. El divorcio también ocurrió durante la vigencia de ese Código. Según lo dispuesto en el Art. 1301, de ese Código, 31 LPRA sec. 3641, son bienes gananciales: (1) los adquiridos por título oneroso durante el matrimonio a costa del caudal común para la comunidad o para uno de los cónyuges, (2) los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos y (3) los frutos, rentas o intereses percibidos o devengados durante el matrimonio tanto de los bienes comunes como de los peculiares de cada cónyuge. Por su parte, el Art. 1308, 31 LPRA sec. 3661, responsabiliza a la sociedad

legal de gananciales por: (1) el pago de todas las deudas y obligaciones contraídas por cualquiera de los cónyuges dentro del matrimonio, (2) los atrasos o créditos devengados durante el matrimonio, (3) las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges, (4) las reparaciones mayores o menores de los bienes gananciales, (5) el sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges y (6) lo préstamos personales en que incurra cualquiera de los cónyuges. El Art. 1295, 31 LPRA sec. 3621, establece que el divorcio acarrea que el marido y la mujer hagan suyos por mitad los bienes obtenidos durante el matrimonio constituido bajo el régimen de sociedad legal de gananciales.

El divorcio conlleva la ruptura completa del vínculo matrimonial y la separación de propiedades y bienes. Este principio estaba establecido en el Art. 105, 31 LPRA sec. 381. A partir del divorcio surge una comunidad de bienes ordinaria entre los excónyuges compuesta por todos los bienes que eran gananciales. Ambos cónyuges participan por partes iguales en la comunidad mediante cuotas independientes, alienables y homogéneas. Durante la vigencia del Código Civil de 1930, la comunidad post ganancial se regía por lo establecido en los Arts. 326 a 340, 31 LPRA ant. secs. 1271 a 1285, sobre comunidad de bienes salvo que existiera un contrato.

Según lo dispuesto en Art. 328 del Código Civil de 1930, 31 LPRA sec. 1273, cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarla según su derecho. Durante la vigencia de la comunidad post ganancial cada excónyuge puede usar la cosa común, aunque ninguno puede tener el control total sobre los

bienes. *Betancourt González v. Pastrana Santiago,* 200 DPR 169, 180 (2018). Los comuneros no pueden usar la cosa común de manera exclusiva y en su propio beneficio, sin pagar la pensión correspondiente a los demás. *Molina González v. Álvarez Gerena,* 203 DPR 442, 453 (2019); *Díaz v. Aguayo,* 162 DPR 801, 811 (2004). No obstante, para tener derecho al pago de una renta es necesario el ejercicio de un acto obstativo o requerimiento afirmativo del comunero que reclama el derecho a una renta. *Molina González v. Álvarez Gerena,* supra, pág. 457.

Las aportaciones al Sistema de Retiro hechas durante el matrimonio son de carácter ganancial, conforme a lo dispuesto en el Art. 1301 (2), *supra,* porque se obtuvieron por el trabajo de uno de los cónyuges. *Rosa Resto v. Rodríguez Solís,* 111 DPR 89, 95-96 (1981). No obstante, el Tribunal Supremo de Puerto Rico ha hecho una distinción entre aquellos casos en que: (1) el patrono pagó en su totalidad las aportaciones al retiro y (2) cuando son sufragadas por el cónyuge mediante deducciones a su salario ganancial. La sociedad legal de gananciales no tiene derecho a reclamar ningún crédito, cuando las aportaciones las pagó el patrono. No obstante, tiene un crédito cuando las hizo el cónyuge mediante deducciones a su salario. *Benítez Guzmán v. García Merced,* 126 DPR 302, 306-307 (1990).

### III

Nos corresponde determinar si no existe controversia de hechos esenciales que impida dictar sentencia sumaria y si el derecho favorece conceder ese remedio a la apelada. El apelante alega que el TPI dictó sentencia sumaria sin contar con su oposición y a pesar de que existe controversia de hechos esenciales.

El TPI no cometió los errores que el apelante alega. La sentencia sumaria está basada y fundamentada en los hechos materiales y esenciales que estipuló con la apelada. La evidencia

documental estipulada, avala y confirma la procedencia de la sentencia sumaria. La señora Pérez Colón probó sumariamente su derecho a recibir créditos por la cantidad de $138,197.27. El apelante no presentó oposición a la moción de sentencia sumaria. No obstante, su oposición es innecesaria porque los hechos que estipuló son más que suficientes para dictar sentencia sumaria.

El apelante cuestiona el crédito que el TPI adjudicó a la apelada por los pagos que hizo a la hipoteca del inmueble propiedad de la Sociedad Legal de Gananciales. Sus argumentos no tienen mérito alguno, porque estipuló los hechos materiales que comprueban la existencia de ese crédito. El apelante estipuló que abandonó la propiedad el 23 de julio de 2013 y que desde esa fecha no hizo ninguna aportación para el pago de la hipoteca, las cuotas de mantenimiento y de derramas del inmueble ganancial. La sentencia de divorcio advino final y firme el 6 de abril de 2014. El apelante aceptó en la estipulación que la apelada permaneció en la propiedad hasta el 31 de octubre de 2015.

La apelada evidenció que asumió el pago de la hipoteca y del mantenimiento a partir del momento en que el apelado se fue de la propiedad y que tuvo que responder por el pago de las derramas. La señora Pérez Colón demostró que tiene un crédito de $56,808.85 por todos los pagos que realizó a la hipoteca del inmueble ganancial durante la vigencia de la sociedad legal de gananciales y de la comunidad post ganancial. Según la prueba documental, el pago mensual de la hipoteca era de $4,384.96. La apelada pagó $21,920.00 en el año 2013, $52,619.52 en el año 2014 y $39,078.18 en el año 2015.

Otro hecho incontrovertido es el crédito de $9,159.92 a favor de la apelada por los pagos que hizo para el mantenimiento del inmueble ganancial durante la existencia de la sociedad legal de gananciales y de la comunidad post ganancial. La cuota de

mantenimiento era de $704.61 mensuales. La apelada evidenció que pagó cinco meses en el año 2013, doce meses en el año 2014 y nueve meses en el año 2015. Igualmente, no existe controversia de que la apelada tiene un crédito de $1,451.68 por el pago de las derramas del inmueble ganancial. El 23 de enero de 2014, la apelada hizo un primer pago de $2,923.16. El 20 de marzo de 2014, la apelada hizo un segundo pago por esa misma cantidad.

El señor Rodríguez Vazquez aduce que la apelada tenía el uso y disfrute exclusivo del inmueble ganancial y que le impidió el acceso. No obstante, es un hecho que el apelante nunca reclamó a la apelada el pago de una renta por la posesión y disfrute exclusivo. Los hechos estipulados, además, demuestran que el apelante no perdió el acceso a la propiedad en la que mantuvo sus pertenencias, luego de que se fue del apartamento. El apelante reconoció que sus pertenencias permanecieron en el inmueble hasta el 5 de enero de 2015. Según las estipulaciones, el apelante se llevó sus pertenencias, luego de que la apelada le informara en un correo electrónico que se iba a mudar a Estados Unidos y necesitaba que le indicara los artículos que quería del apartamento.

Otro hecho incuestionable es la existencia de un crédito de $38,056.61 a favor de la apelada por las aportaciones al retiro del apelante. Las partes estipularon la Certificación del Sistema del Retiro de Educación que evidencia que el apelante aportó $64,789.86 durante la vigencia del matrimonio y que se acumularon intereses por la cantidad de $11,323.36 hasta el 31 diciembre de 2016.

La apelada probó un crédito de $10,962.47 por los pagos que hizo al Departamento de Rentas Internas Federal. Las partes estipularon los Estados de cuenta del IRS y de los pagos realizados. La prueba documental evidenció que el IRS auditó la planilla conjunta de las partes en el año 2013. El IRS encontró una deuda

de $21,924.94 correspondiente a los años 2008, 2009 y 2013. La apelada pagó la totalidad de esa deuda.

Igualmente es un hecho incontrovertido que la apelada tiene un crédito de $3,475.41 por el reintegro de $8,918.00 del Departamento de Hacienda. La agencia otorgó a ambas partes un reintegro de $8,918.00, correspondiente al año 2013, mientras existía la Sociedad Legal de Gananciales. La apelada endosó el cheque al apelante que retuvo el reintegro en su totalidad. No obstante, la apelada reconoció que el apelante usó $983.59 del reintegro para el pago de la tarjeta VISA de ambos.

La apelada también evidenció que tiene otro crédito de $320.35 por los pagos que hizo a la tarjeta de crédito de Macy's, porque era una deuda ganancial. Las partes estipularon los estados de cuentas de esa tarjeta que establecen que para julio de 2013 existía una deuda de $640.70. La apelada pagó la totalidad de la deuda e hizo un sobrepago de $7.90.

Por último, es incontestable que la apelada tiene un crédito de $17,961.98 por el embargo de sus bienes para el cobro de la sentencia dictada contra ambas partes. La apelada pagó la totalidad del embargo en el caso núm. SJ2018CV0792 por el cobro de dinero de derramas y cuotas de mantenimiento que gravaban el inmueble ganancial que pasó a ser parte de la comunidad post ganancial. El 4 de octubre de 2018, el TPI dictó una sentencia contra ambas partes por $35,921.96 más los intereses. Los $35,921.96 se cobraron mediante embargo de los bienes de la apelada. Al apelante solo se le embargaron $799.00 para el pago de la sentencia.

Este tribunal realizó un juicio de novo de la totalidad de la prueba que consideró el TPI. Las estipulaciones entre las partes nos convencen de que no existe controversias de hechos esenciales que impidan dictar sentencia sumaria a favor de la apelada.

**IV**

Por lo fundamentos antes expuestos, se confirma la sentencia sumaria apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones